ACCEPTED
07-15-00117-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
6/4/2015 11:06:54 AM
Vivian Long, Clerk

No. 07-15-00117-CV

IN THE COURT OF APPEALS
SEVENTH DISTRICT OF TEXAS
AT AMARILLO

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS

6/4/2015 11:06:54 AM

VIVIAN LONG
CLERK

HOFER BUILDERS, INC.
Defendant - Appellant

v.

FIREMAN'S FUND INSURANCE COMPANY
AS SUBROGEE OF UNITED RENTALS, INC.,
Plaintiff - Appellee

Appeal from the County
Court at Law No. 3 of
Tarrant County, Texas
Cause No. 2014-001872-3
The Honorable Judge Mike Hrabal presiding

BRIEF FOR HOFER BUILDERS, INC., APPELLANT

THE COX LAW FIRM, PLLC
1300 Norwood Dr., Suite 100
Bedford, TX 76022
Telephone: (817) 860-9200
Facsimile: (817) 860-9205
Edward S. Cox
State Bar No. 00793560
ed@edcoxlaw.com
Mary R. Torres
State Bar No. 24086084
mary@edcoxlaw.com
ATTORNEYS FOR APPELLANT

**ORAL ARGUMENT IS REQUESTED**

i

# Table of Contents

I. Identity of Parties and Counsel .......................................................... iii

II. Index of Authorities .......................................................................... iv

III. Statement of the Case .................................................................... viii

IV. Statement Regarding Oral Argument............................................. viii

V. Issues Presented ............................................................................... viii

VI. Statement of Facts .............................................................................1

VII. Summary of Argument.....................................................................3

VIII. Argument and Authorities ..............................................................4

    A. The Trial Court Erred in Denying Hofer's Motion for New Trial ...4

    B. The Evidence is Legally and Factually Insufficient to Support the Unliquidated Damages Award.............................................................14

    C. Conclusion ....................................................................................23

IX. Prayer ...............................................................................................24

X. Certificate of Service .........................................................................24

XI. Appendix..........................................................................................26

    Trial Court's Judgment signed December 8, 2014 ...............................A1
    Trial Court's Order signed February 10, 2015 .....................................A3
    TEX. R. CIV. P. 243. ...........................................................................A4
    TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b). .............................A5
    TEX. CIV. PRAC. & REM. CODE § 38.001. ..........................................A7
    Excerpts from Clerk's Record ............................................................A8
    Excerpts from Reporter's Record .......................................................A44

# I. IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties to the trial court's final judgment, as well as the names and addresses of all trial and appellate counsel.

**PARTIES**                          **COUNSEL**

**Plaintiff:**                       Jeffrey S. Reddall
Fireman's Fund Insurance Company     THE LAW OFFICE OF JEFFREY S.
As Subrogee of United Rentals, Inc.  REDDALL
                                     One Sugar Creek Center Blvd.,
                                     Suite 925
                                     Sugar Land, Texas 77478


**Defendant:**                       Edward S. Cox
Hofer Builders, Inc.                 Mary R. Torres
                                     THE COX LAW FIRM, PLLC
                                     1300 Norwood Dr., Ste. 100
                                     Bedford, Texas 76022

## II. INDEX OF AUTHORITIES

### Supreme Court of Texas Cases

*Angelo v. Champion Rest. Equip. Co.,*
  713 S.W.2d 96 (1986) ..............................................................................14

*Arthur Andersen & Co. v. Perry Equip. Corp.,*
  945 S.W.2d 812 (1997) ............................................................................21

*Bank One, Texas, N.A. v. Moody,*
  830 S.W.2d 81 (1992) .................................................................................6

*Champion Int'l Corp. v. Twelfth Court of Appeals*,
  762 S.W.2d 898 (1988) ...............................................................................4

*Craddock v. Sunshine Bus Lines, Inc.,*
  133 S.W.2d 124 (1939) ...................................................................... passim

*Dir., State Emps. Workers' Comp. Div. v. Evans,*
  889 S.W.2d 266 (1994) ...................................................................... passim

*Downer v. Aquamarine Operators, Inc.,*
  701 S.W.2d 238 (1985) ...............................................................................5

*Estate of Pollack v. McMurrey,*
  858 S.W.2d 388 (1993) .............................................................................11

*Gaines v. Kelly*,
  235 S.W.3d 179 (2007) ...............................................................................9

*Golden Eagle Archery, Inc. v. Jackson,*
  116 S.W.3d 757 (2003) .............................................................................16

*Holt Atherton Ind., Inc. v. Heine,*
  835 S.W.2d 80 (1992) .................................................................................7

*In re R.R.,*
   209 S.W.3d 112 (2006) (per curiam) ................................................................5

*IRA Res., Inc. v. Griego,*
   221 S.W.3d 592 (2007) ................................................................8

*Irvine v. Grady,*
   19 S.W. 1028 (1892) ................................................................9

*Morgan v. Compugraphic Corp.,*
   675 S.W.2d 729 (1984) ................................................................15

*New Amsterdam Cas. Co. v. Tex. Indus., Inc.,*
   414 S.W.2d 914 (1967) ................................................................22

*Pool v. Ford Motor Co.,*
   715 S.W.2d 629 (1986) ................................................................16

*Sutherland v. Spencer,*
   376 S.W.3d 752 (2012) ................................................................ 5-6

*Tex. Commerce Bank, Nat'l. Assn. v. New,*
   3 S.W.3d 515 (1999) (per curiam) ........................................................ 14, 16-17

*Tony Gullo Motors I, L.P. v. Chapa,*
   212 S.W. 3d 299 (2006) ................................................................22

*Tucker v. Thomas,*
   419 S.W.3d 292 (2013) ................................................................22

## Courts of Appeals Cases

*Comanche Nation v. Fox,*
   128 S.W.3d 745 (Austin 2004, no pet.) ........................................................ 5-6

*Cruz v. State,*
    737 S.W.2d 74 (San Antonio 1987, no writ) ...................................................13

*Dawson v. Briggs,*
    107 S.W.3d 739 (Beaumont 1993, no pet.) ....................................................16

*Dodd v. Savino,*
    426 S.W.3d 275 (Houston [14th Dist.] 2014, no pet. h.)................................16

*Ferguson & Co. v. Roll,*
    776 S.W.2d 692 (Dallas 1989, no writ) ............................................................5

*Ferrell v. Ferrell,*
    820 S.W.2d 49 (Corpus Christi 1991, no writ) .................................................5

*Gotch v. Gotch,*
    416 S.W.3d 633 (Houston [14th Dist.] 2013, no pet. h.) ...............................15

*Gotcher v. Barnett,*
    757 S.W.2d 398 (Houston [14th Dist.] 1988, no writ) .....................................5

*Interconex, Inc. v. Ugarov,*
    224 S.W.3d 523 (Houston [1st Dist.] 2007, no pet.)................................ 15-16

*In the Interest of A.P.P.,*
    74 S.W.3d 570 (Corpus Christi 2002, no pet.)..................................................6

*Jones v. Andrews,*
    74 S.W.3d 570 (Corpus Christi 2002, no pet.)................................................17

*Lefton v. Griffith,*
    873 S.W.2d 102 (Dallas 1994, no writ) ..................................................... 17-18

*Norton v. Martinez,*
    935 S.W.2d 898 (San Antonio 1996, no writ) ..................................................5

*Sells v. Drott*,
259 S.W.3d 194 (Tyler 2007, rev'd on other grounds)....................................13

*Transport Concepts, Inc. v. Reeves,*
748 S.W.2d 302 (Dallas 1998, no pet.) ............................................................14

## Statutes and Rules

TEX. R. CIV. P. 243..................................................................................14, 16

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b). ....................................21

TEX. CIV. PRAC. & REM. CODE § 38.001. ...............................................22

### III. STATEMENT OF THE CASE

This is a breach of contract and negligence case brought by Fireman's Fund Insurance Company as Subrogee of United Rentals, Inc. ("Fireman's") against Hofer Builders, Inc. ("Hofer")[1] Fireman's filed a motion for default judgment on November 18, 2014, attaching affidavit testimony in support of its request for an award of unliquidated damages.[2] The trial court granted Fireman's motion, signing its Judgment on December 8, 2014.[3] Hofer timely filed a motion for new trial on January 5, 2015.[4] The trial court denied this motion by order dated February 10, 2015.[5] Hofer timely perfected this appeal on March 5, 2015.[6]

### IV. STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument.

### V. ISSUES PRESENTED

<u>Issue Number One:</u> Hofer asks the Court to hold that the Trial Court abused its discretion in denying Hofer's Motion for New Trial. A trial

---

[1] C.R. pgs. 5-9.
[2] C.R. pgs. 10-19.
[3] C.R. pgs. 20-21.
[4] C.R. pgs. 24-32.
[5] C.R. pg. 46.

court abuses its discretion when it acts without reference to any guiding rules or principles. The Trial Court denied Hofer's Motion for New Trial, finding Hofer consciously indifferent based on imputation of Hofer's insurance carrier's knowledge of Fireman's final answer deadline to Hofer after Hofer's insurance carrier had notified Hofer and Fireman's counsel that it would not provide Hofer a defense in the lawsuit and was denying coverage of Hofer's claim. However, a principal is not affected by an alleged agent's knowledge when a third party unreasonably relies on the agent's apparent authority. Was it reasonable for Fireman's counsel to rely on Hofer's insurance carrier's apparent authority *after* it had been advised by Hofer's insurance carrier that it was not providing Hofer a defense and was denying coverage or did the carrier's notification terminate its authority?

<u>Issue Number Two:</u> During a default judgment proceeding, affidavit testimony will support the award of unliquidated damages if the affidavit avers personal knowledge of the facts, describes the circumstances that resulted in the loss, and identifies the total amount owed as a result.

---

[6] C.R. pgs 47-48.

Documents that represent merely conclusory allegations, however, will not support an award of unliquidated damages in a default judgment proceeding. The evidence presented by Fireman's in support of its unliquidated damages award consisted of a business records authentication with attached claim inquiries and an estimate for repair work, and the affidavit of Fireman's counsel stating that a 33 1/3% contingent fee is regular and accepted practice in Texas. Was the evidence presented to the trial court sufficient to support the unliquidated damages awarded?

## VI.    STATEMENT OF FACTS

Fireman's filed its Original Petition on April 15, 2014, asserting causes of action for breach of contract and negligence for damage to a forklift rented by Hofer.[7] In accordance with the terms of its insurance policy, Hofer promptly notified its insurance carrier of the lawsuit, after being served with the lawsuit on May 5, 2014.[8] When Hofer notified its insurance carrier of the suit, its insurance carrier contacted Fireman's counsel to request an extension of the answer deadline for purposes of investigating the claim.[9] From this point forward, Fireman's counsel communicated only with the insurance carrier.[10] Fireman's counsel entered into several agreements with the insurance carrier extending the answer deadline.[11]

Upon conclusion of the investigation, the insurance carrier notified both counsel for Fireman's and Hofer that it would not cover the claim, nor would it provide a defense.[12] With the knowledge that the insurance carrier was denying Hofer's claim, Fireman's counsel communicated Hofer's new answer deadline to the insurance carrier, requesting that the insurance

---

[7] C.R. pg. 5-9.
[8] C.R. pg. 31-32 ¶5.
[9] C.R. pg. 31-32 ¶6, pg. 38.
[10] C.R. pg. 31-32 ¶6.
[11] C.R. pg. 38.

carrier notify Hofer of the deadline.[13] This deadline was not communicated to Hofer, through its insurance carrier or by Fireman's counsel, despite the insurance carrier's email communication to Fireman's counsel representing otherwise.[14]

On November 18, 2014, Fireman's filed its Motion for Default Judgment, where its counsel certified that the motion had been delivered to all parties or their respective counsel of record via certified mail, return receipt requested.[15] In its Motion, Fireman's affirmatively represents that its damages are unliquidated, and that the court can award damages based upon affidavits without holding an evidentiary hearing.[16] As evidence proving its damages, Fireman's attached: 1) an affidavit certifying business records; 2) an estimate for repair work prepared by JLG Equipment Services on March 1, 2013; 3) Internal Claim Inquiries demonstrating payment by Fireman's to its insured in the total amount of $27,418.34; and 4) an affidavit for attorney's fees made by counsel for Fireman's, stating

---

[12] C.R. pg. 32 ¶7, pg. 40.
[13] C.R. pg. 38-40
[14] C.R. pg. 32 ¶8, pg. 40.
[15] C.R. pg. 10-11.
[16] C.R. pg. 10.

that a 33 1/3% contingent fee is "reasonable and accepted practice in Texas."[17]

Based on this evidence, the court signed its order granting default judgment against Hofer on December 8, 2014.[18] The court found that Hofer was indebted to Fireman's in the principal amount of $31,550.34, and reasonable attorney's fees in the amount of $12,460.31.[19] The court then ordered that Fireman's should have and recover $37,418.34 from Hofer, along with the $12,460.31 in attorney's fees.[20] Hofer timely filed a Motion for New Trial (the "Motion"),[21] which the trial court denied on February 10, 2015.[22]

## VII.  SUMMARY OF THE ARGUMENTS

The trial court erred in denying Hofer's Motion for New Trial on the basis of its finding that Hofer's failure to answer was not the result of accident or mistake, but instead was the result of conscious indifference or an intentional failure. Hofer presented sufficient affidavit testimony demonstrating that it was not aware of the final answer deadline, resulting

---

[17] C.R. pg. 13-19.
[18] C.R. pg. 20-21.
[19] *Id.*
[20] *Id.*
[21] C.R. pgs. 24-32

3

in its failure to file an answer. Further, the evidence relied on by the trial court in issuing its award of unliquidated damages is insufficient to support the award. The affidavits submitted by Fireman's in support of its damages contain merely conclusory statements regarding the damages sustained by Fireman's.

## VIII. <u>ARGUMENTS AND AUTHORITIES</u>

**A. The Trial Court Erred in Denying Hofer's Motion for New Trial.**

The standard of review for a trial court's denial of a motion for new trial is the abuse of discretion standard.[23] A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or in other words, if it acts without reference to any guiding rules or principles.[24] When a defendant does not file an answer because of a mistake or accident, the default judgment should be set aside and a new trial ordered in any case in which the defaulting party can satisfy the three elements set forth in *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939), which are: 1) the party's failure to file a response was not intentional or the result of conscious indifference; 2) the party "sets up" at least one defense that, if

---

[22] C.R. pg. 46

[23] *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex. 1988).

4

proven, counters the pleading at issue; and 3) the granting of a new trial will not unfairly prejudice the opposing party.[25]

Following a no answer default judgment, new trials have historically been liberally granted because public policy prefers a trial on the merits.[26] To that end, a defaulting party must provide some excuse, but not necessarily a good excuse for failing to timely file an answer.[27] Even a "slight excuse" will suffice to set aside a default judgment.[28] For example, good faith reliance on the advice of an ostensible authority figure who had no apparent legal authority was held sufficient to set aside a default judgment.[29]

A trial court abuses its discretion in denying a motion for new trial when the *Craddock* elements are satisfied.[30] Under *Craddock*, when the defaulting party fails to answer in a timely manner due to accident or

---

[24] *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985).

[25] *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939).

[26] *See, e.g. Norton v. Martinez*, 935 S.W.2d 898, 901 (Tex. App.—San Antonio 1996, no writ); *Ferguson & Co. v. Roll*, 776 S.W.2d 692, 697 (Tex. App—Dallas 1989, no writ); *Gotcher v. Barnett*, 757 S.W.2d 398, 402(Tex. App.—Houston [14th Dist.] 1988, no writ).

[27] *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012) *citing In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006) (per curiam).

[28] *Comanche Nation v. Fox*, 128 S.W.3d 745, 750 (Tex. App.—Austin 2004, no pet.) *citing Ferrell v. Ferrell*, 820 S.W.2d 49 (Tex. App.—Corpus Christi 1991, no writ).

mistake and not as the result of conscious indifference or an intention not to respond, then, upon the defaulting party's motion, the court must set aside the resulting judgment and grant a new trial.[31] "The absence of an intentional failure to answer is the controlling factor under this analysis."[32] Consciously indifferent conduct occurs when the defendant knew it was sued but did not care.[33]

Here, the trial court denied Hofer's Motion for New Trial on the basis that Hofer failed to establish the first *Craddock* element, reasoning that: 1) Hofer failed to file an answer based on the representations of an insurance agent;[34] 2) Hofer did not contact an attorney immediately, but instead contacted its insurance carrier;[35] 3) Hofer relied on its insurance carrier, who was not an attorney, to represent it in the lawsuit;[36] 4) the insurance carrier did not have authority to act on behalf of Hofer in obtaining

---

[29] *Comanche Nation*, 128 S.W.3d at 750.

[30] *Bank One, Texas, N.A. v. Moody,* 830 S.W.2d 81, 85 (Tex. 1992).

[31] *See Craddock*, 133 S.W.2d at 126; *Dir., State Emps. Worker's Comp. Div. v. Evans*, 889 S.W.2d 266 (Tex. 1994) (Where the Craddock elements are satisfied, the court has no discretion but to set aside the judgment.).

[32] *In the Interest of A.P.P.*, 74 S.W.3d 570, 573 (Tex. App.—Corpus Christi 2002, no pet.) *citing Craddock*, 133 S.W.2d at 125.

[33] *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012)

[34] R.R. pg. 8, lines 23-25

[35] R.R. pg. 9, lines 8-9

[36] R.R. pg. 13 lines 24-25, pg. 14 lines 1-3, pg. 24, lines 21-22

extensions of the answer deadline in a lawsuit;[37] and 5) the insurance carrier was acting as Hofer's agent when the answer deadline was conveyed, so Hofer must prove its failure to answer was not the result of the insurance carrier's conscious indifference or intentional conduct.[38] Ultimately, the trial court concluded that, in order to grant Hofer's Motion for new trial, it would have required affidavit testimony from Fireman's counsel admitting that communicating the answer deadline only to the insurance carrier was a mistake.[39]

The first rule of law it appears the trial court applied in its decision was that reliance upon an insurance agent to file an answer does not satisfy the mistake or accident standard under the *Craddock* test.[40] Application of this rule of law to the facts at hand, however, was error. Hofer did not rely upon its insurance agent to file an answer. Hofer notified its insurance carrier of the lawsuit in accordance with the terms of its insurance policy and relied upon its insurance carrier to conduct an investigation to

---

[37] *See* R.R. pg. 15, lines 11-12, 20-21, pg. 16, lines 8-14, pg. 17, lines 14-22
[38] R.R. pg. 21, lines 22-25, pg. 22, lines 1-5, 11-25
[39] R.R. pg. 25, lines 3-5, 7-9
[40] *Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992).

7

determine whether it would be providing Hofer a defense in the lawsuit.[41] When contacted by the insurance carrier, Fireman's counsel entered into several agreements with the insurance carrier for the extension of Hofer's answer deadline, so that the insurance carrier could conclude its investigation of the claim without incurring the expense of providing a defense while it was still investigating.[42] The insurance carrier later notified both Hofer and Fireman's counsel that upon conclusion of its investigation, it had determined it would not be providing a defense to the lawsuit.[43]

The trial court went on to apply principles of agency law to impute the insurance carrier's knowledge of the answer deadline to Hofer for the purpose of concluding that Hofer was consciously indifferent.[44] The law does not presume agency, and therefore the party asserting agency has the burden to prove it.[45] While Fireman's alleges in its Response that the insurance carrier was Fireman's agent,[46] one conclusory allegation cannot be said to meet Fireman's burden of proving the agency relationship.

---

[41] *See* C.R. pgs. 31-32 ¶5.
[42] *See* C.R. pg. 38.
[43] C.R. pg. 32 ¶7, pg. 40.
[44] R.R. pg. 24, lines 21-25
[45] *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007).
[46] C.R. pg. 35

Fireman's made no further argument with respect to the existence of the alleged agency relationship at the hearing on Hofer's motion for new trial.[47]

Generally, notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, the principal.[48] However, a principal will not be affected by an agent's knowledge concerning a matter outside the scope of the agent's actual authority, but within the agent's apparent authority, unless a third person has relied on the agent's apparent authority.[49] To determine an agent's apparent authority, a court examines the conduct of the principal and the reasonableness of the third party's assumptions about authority.[50]

First, the insurance carrier's actual authority was terminated upon notification that it would not cover the claim or provide a defense in the lawsuit.[51] Second, it cannot be said that the insurance carrier continued to

---

[47] *See* R.R. pg. 6, lines10-23; pg. 7, lines 22-25; pg. 8, lines 1-7; pg. 23, lines 20-25; pg. 24, lines 1-12.

[48] *Irvine v. Grady*, 19 S.W. 1028 (Tex. 1892).

[49] RESTATEMENT 2D OF AGENCY § 273

[50] *Gaines v. Kelly*, 235 S.W.3d 179, 183 (Tex. 2007).

[51] *See* C.R. pg. 40.

be cloaked in apparent authority after it had given notice to Hofer and Fireman's counsel, which notice Fireman's counsel acknowledged receiving, that it had denied coverage of the claim and would not be providing a defense in the lawsuit.[52] Therefore, Fireman's counsel could not rely upon or reasonably assume the insurance carrier had any apparent authority for the purpose of imputing its knowledge to Hofer when he conveyed the answer deadline on October 6, 2014,[53] or when he served notice of his motion for default judgment and hearing thereon. Therefore, the insurance carrier's knowledge of the answer deadline cannot be imputed to Hofer since the insurance carrier did not have actual or apparent authority to obtain the answer deadline on Hofer's behalf or to convey the answer deadline to Hofer.

In light of Hofer's affidavit testimony denying that it ever received notice of the answer deadline, or of the motion for default judgment and hearing thereon,[54] Fireman's was required to present evidence specifically controverting the factual allegations made by Hofer with reference to the first element of the *Craddock* test, or Hofer's affidavit must be taken as true

---

[52] *Id.*
[53] *Id.*

for the purposes of determining conscious indifference.[55] For instance, in *Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266 (Tex. 1994), the State's motion for new trial and attached affidavits stated facts that negated that its failure to appear was intentional or the result of conscious indifference.[56] The State's counsel was misinformed by her predecessor about the trial setting, and believed it was on a later date.[57]

Although Evans presented testimony that the State's counsel's secretary had knowledge of the trial setting, pointed to the State's affidavit that counsel had reviewed the case file, and attached exhibits establishing the trial setting and the letters sent regarding the case, the court found that Evans did not specifically controvert State's counsel's belief that the trial setting was on a later date.[58] Therefore, the State's affidavit, for the purpose of establishing lack of conscious indifference, was taken as true, and a new trial was granted.[59]

---

[54] C.R. pg. 32 ¶8-9.
[55] *See Dir., State Emples. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994).
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id. citing Estate of Pollack v. McMurrey,* 858 S.W.2d 388, 391 (Tex. 1993).

The evidence presented by Fireman's was the affidavit of Fireman's counsel authenticating attached email communications as business records.[60] The affidavit discusses his communications with the insurance carrier related to transmitting the message to Hofer that there was a new answer deadline of October 10, 2014, and that if no answer was filed by then, Fireman's would file a motion for default judgment.[61] The attached email communications include the representation of the insurance carrier that the message was conveyed, as requested, to Hofer.[62] Hofer was not copied on any of these email communications.[63] Hofer presented sworn affidavit testimony that the answer deadline was not conveyed.[64]

Fireman's did not present any affidavit testimony swearing that the answer deadline was conveyed to Hofer.[65] The trial court relied on an unsworn statement from the insurance carrier contained in an email communication to Fireman's counsel, in the face of Hofer's sworn testimony that the deadline was not conveyed, in finding that Hofer knew

---

[60] C.R. pgs. 38-45.
[61] C.R. pg. 38.
[62] C.R. pg. 40.
[63] C.R. pgs. 40-45.
[64] C.R. pg. 32 ¶8.
[65] *See* C.R. pgs. 38-45.

of the answer deadline, but did not care.[66] An unsworn statement in an email communication that a message was conveyed to a third party is no evidence that the third party ultimately received notice.[67] Therefore, Fireman's has presented no evidence controverting Hofer's sworn statement that it did not receive notice of the new answer deadline.[68] For the foregoing reasons, the trial court's finding that Hofer's failure to answer was not the result of an accident or mistake, but instead was the result of conscious indifference is unsupported and an insufficient basis for the trial court's denial of Hofer's motion for new trial.

Although not addressed by the trial court, Hofer also satisfied both other elements of the *Craddock* test. Hofer set up a meritorious defense by alleging that a manufacturing defect, and not any action of Hofer, was the cause of the equipment failure and resulting damage.[69] These facts, if true, would establish a sole cause defense.[70] Finally, Hofer satisfied the third *Craddock* element by alleging that granting a new trial would not injure

---

[66] *See* R.R. pg. 22, lines 12-15, 21-25; pg. 24, lines 23-25
[67] *See Sells v. Drott*, 259 S.W.3d 194, 199 (Tex. App.—Tyler 2007, rev'd on other grounds) *citing Cruz v. State*, 737 S.W.2d 74, 76 (Tex. App.—San Antonio 1987, no writ).
[68] *See Evans*, 889 S.W.2d at 269.
[69] *See Evans*, 889 S.W.2d at 270; C.R. pgs. 28-29.
[70] *See id.*

Fireman's and that Hofer was prepared to proceed expeditiously to trial.[71]

Once Hofer made the allegation that granting a new trial would not injure Fireman's, the burden of going forward with proof of injury shifted to Fireman's.[72] Fireman's did not allege, nor prove any injury it would sustain as the result of granting a new trial.[73] Hofer, therefore, has established the second and third *Craddock* elements. Because Hofer established all three elements of the *Craddock* test, the trial court abused its discretion by not granting Hofer's motion for new trial.

## B. The Evidence is Legally and Factually Insufficient to Support the Unliquidated Damages Award.

When a no-answer default judgment is taken on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, except for the amount of damages.[74] The plaintiff must present evidence of unliquidated damages, and this evidence must be both competent and consistent with the cause of action plead.[75] Proof of damages must

---

[71] *Id. citing Angelo v. Champion Rest. Equip. Co.,* 713 S.W.2d 96, 98 (Tex. 1986); C.R.
[72] *Id.*
[73] C.R. pg. 36.
[74] *Tex. Commerce Bank, Nat'l. Assn. v. New,* 3 S.W.3d 515, 516 (Tex. 1999) (per curiam); *Transport Concepts, Inc. v. Reeves,* 748 S.W.2d 302, 305 (Tex. App.-Dallas 1998, no writ, no pet.); TEX. R. CIV. P. 243 (if cause of action is unliquidated, court "shall hear evidence as to damages").
[75] *Id.; see* TEX. R. CIV. P. 243.

necessarily include proof of a causal connection between the event sued upon and the alleged damages.[76] Therefore, when damages are unliquidated, the plaintiff must also present competent evidence of the "causal nexus" between the event sued upon and the plaintiff's injuries.[77] For instance, to recover consequential damages in a breach of contract action, the plaintiff must show that the damages sought were the natural, probable, and foreseeable consequence of the defendant's conduct.[78]

When a specific attack is made on the legal and factual sufficiency of the evidence to support the trial court's determination of damages in a default judgment, the court must review the evidence produced.[79] The appellate court will sustain a legal or no-evidence challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes

---

[76] *Interconex, Inc. v. Ungaro*, 224 S.W.3d 523, 530-31 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

[77] *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731-32 (Tex. 1984).

[78] *Gotch v. Gotch*, 416 S.W.3d 633, 637-38 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

conclusively the opposite of a vital fact.[80] When the plaintiff specifically requests and apparently receives certain amounts for particular elements of damages in a default judgment hearing pursuant to Texas Rule of Civil Procedure 243, the court may review the sufficiency of the evidence to support the specific awards requested and apparently received.[81]

During a default judgment proceeding, affidavit testimony will support the award of unliquidated damages if the affidavit avers personal knowledge of the facts, describes the circumstances that resulted in the loss, and identifies the total amount owed as a result.[82] But documents that represent merely conclusory allegations are no evidence of damages at all and will not support an award of unliquidated damages in a default judgment proceeding.[83]

For instance, in *Tex. Commerce Bank*, 3 S.W.3d 515, 516 (Tex. 1999), the trial court awarded unliquidated damages in a default judgment to the

---

[79] *Id.* at 751; *see generally Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757 (Tex. 2003), *citing Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986) (factual sufficiency of evidence supporting damages).

[80] *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 530 (Tex. App.—Houston [1st Dist. 2007, no pet.).

[81] *Dawson v. Briggs,* 107 S.W.3d 739, 749 (Tex. App.—Beaumont 1993, no pet.).

[82] *Dodd v. Savino*, 426 S.W.3d 275, 293 (Tex. App.—Houston [14th Dist.] 2014, no pet. h.) *citing Tex. Commerce Bank*, 3 S.W.3d at 517).

plaintiff on the basis of affidavit testimony supporting damages and attorney's fees.[84] On review by the Supreme Court of Texas, the sufficiency of the affidavit testimony from the plaintiff in support of its claim for damages was upheld.[85] The affidavit in support of the damage award explained how liability had been incurred, detailed the specifics of a check-kiting scheme perpetrated by the defendants, and stated that the affiant had reviewed pertinent bank records and determined that the overdrawn balance was $729,510.96.[86] The attorney's fees affidavit stated that the attorney believed his fee of $30,000 was reasonable based on the services rendered, which he then detailed.[87]

By comparison, in *Lefton v. Griffith*, 136 S.W.3d 271 (Tex. App.—San Antonio 2004, no pet.), the affidavit testimony provided to the trial court was legally insufficient to support an award for damages.[88] The affiant failed to provide a factual basis or explanation for how she arrived at the

---

[83] *Lefton v. Griffith*, 136 S.W.3d 271, 277 (Tex. App.—San Antonio 2004, no pet.) *citing Jones v. Andrews*, 873 S.W.2d 102, 107 (Tex. App.—Dallas 1994, no writ).
[84] *Tex. Commerce Bank*, 3 S.W.3d at 515.
[85] *Id* at 517.
[86] *Id*.
[87] *Id.* at 517-18.
[88] *Lefton*, 136 S.W.3d at 277.

damage amounts in her affidavit, even though she was clearly qualified to testify about the figures.[89]

The affidavit filed by Fireman's as evidence in support of its first damage component is insufficient to prove the amount of damages awarded in the default judgment. The affidavit in support of the $37,418.34 damage figure is merely a business records authentication. It does not provide a factual basis or explanation detailing how the figure was calculated, but instead points to attached business records providing "an itemized statement of the damages sustained by Fireman's as a result of the occurrence made the basis of this lawsuit." The affiant goes on to testify that "[T]he amount of reasonable and necessary damages sustained by Fireman's Fund Insurance Company as a result of the occurrence made the basis of this lawsuit is $37,418.34." This affidavit testimony is merely a conclusory allegation as to the figure of damages provided and as to the causal nexus between the event made the basis of the lawsuit and Fireman's injuries giving rise to damages.

At most, the business records attached to the affidavit demonstrate that Fireman's suffered only $27,418.34 in damages. The larger figure,

---

[89] *Id.*

presumably, is derived from the attached estimate for repair work prepared by JLG Equipment Services, Inc. for United Rentals. There is, however, no evidence that this company actually performed the repairs, or that the final repair bill was the same as the attached estimate. The claim inquiries attached to the affidavit, detailing payments made by Fireman's to its insured, represent that Fireman's has issued two checks to its insured, United Rentals, Inc., in the amounts of $10,782.41 and $16,635.93.

The affidavit and the attached documentation fail to establish a "causal nexus" between the event sued upon and the plaintiff's injuries. Neither the estimate for repair of equipment or Fireman's internal claim inquiries provide any indication that the damage figures outlined therein resulted from the alleged damage to the forklift at issue in the underlying lawsuit against Hofer. In fact, neither piece of evidence demonstrates any connection between the event sued upon and the damages allegedly suffered by Fireman's. Fireman's internal claim inquiries reflect payments Fireman's made to its insured which could be for any number of potential losses under its insurance policy with Fireman's.

The affidavit utilized by Fireman's in support of its attorney's fee award is also insufficient evidence to support the judgment awarding

attorney's fees in the amount of $12,460.31. Counsel for Fireman's testified in his affidavit that "It is a reasonable and accepted practice in Texas, that the minimum fee contract for such legal representation should be 33 1/3% of the amount of the Plaintiff's claim.[90] The amount of reasonable attorney's fees in this case which is in accordance with local practice is the sum of at least $12,460.31…," which is 33 1/3% of the damage award in the case, $37,418.34.[91]

The mere fact that a party and lawyer have agreed to a contingent fee does not mean that the fee arrangement is in and of itself reasonable for purposes of shifting that fee to the defendant.[92] Accordingly, while it is 'regular practice' that many plaintiffs must contract for a contingent fee to secure the services of a lawyer, the Supreme Court of Texas has refused to allow the shifting of the plaintiff's entire contingent fee to the defendant without consideration of the factors required by the Rules of Professional Conduct.[93]

These factors are: the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal

---

[90] C.R. pg. 18.
[91] *See.* C.R. pg. 18, 21.

services properly in this arbitration; the likelihood that the acceptance and pursuit of this particular matter has and will preclude other employment by me until this proceeding is concluded; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the circumstances of this arbitration proceeding; the nature and length of my professional relationship with the client; the experience, reputation, and ability of the lawyer or lawyers performing the services in this arbitration proceeding; and the fact that the attorney's recovery of any fee in this matter is contingent on results obtained coupled with the uncertainty of collection before the legal services have been rendered.[94] None of the required factors were addressed in Fireman's attorney's fees affidavit, which was the only evidence offered in support of the attorney's fee award.[95]

Further, Fireman's failed to segregate its attorney's fees related solely to a claim for which fees are unrecoverable. Fireman's asserted causes of action for breach of contract and negligence.[96] Texas has long adhered to

---

[92] *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997).
[93] *Id.*
[94] TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b).
[95] C.R. pgs. 18-19.
[96] C.R. pgs. 5-9.

the American Rule with respect to awards of attorney's fees, which prohibits the recovery of attorney's fees from an opposing party in legal proceedings unless authorized by statute or contract.[97] The contract between Fireman's insured and Hofer is not in the record.[98] Although recovery of attorney's fees for a breach of contract clam is permitted by statute,[99] attorney's fees are not recoverable in a negligence suit.[100] Therefore, Fireman's was required to segregate the attorney's fees it incurred in prosecution of the negligence cause of action from those incurred in prosecution of its breach of contract claim.[101] As Fireman's failed segregate its attorney's fees related solely to a claim for which fees are unrecoverable, the award cannot stand.

No hearing was held on damages, the award was instead based solely on affidavits. The above-described shortcomings in the affidavits considered by the court in awarding unliquidated damages in its default judgment render those awards invalid because they are not supported by sufficient evidence.

---

[97] *Tucker v. Thomas*, 419 S.W.3d 292,295 (Tex. 2013).
[98] *See* C.R. pgs. 5-19.
[99] TEX. CIV. PRAC. & REM. CODE § 38.001.
[100] *New Amsterdam Cas. Co. v. Tex. Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967).
[101] *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W. 3d 299, 313-14 (Tex. 2006).

## C.    Conclusion

The trial court erred in denying Hofer's Motion for New Trial. Hofer's failure to answer Fireman's petition was the result of an accident or mistake, a miscommunication amongst Fireman's counsel, Hofer's insurance carrier, and Hofer, and was not the result of Hofer's intentional failure or conscious indifference. Hofer set up a meritorious defense by alleging that a manufacturing defect, and not any action of Hofer, was the cause of the equipment failure and resulting damage. Finally, Hofer alleged that granting a new trial would not injure Fireman's and that Hofer was prepared to proceed expeditiously to trial and Fireman's failed to allege or prove any injury it would sustain as the result of granting a new trial. Hofer, therefore, established all three elements of the *Craddock* test, and the trial court's denial of Hofer's motion for new trial was an abuse of discretion.

The evidence relied on by the trial court in issuing its award of unliquidated damages is also insufficient to support the award. The affidavits submitted by Fireman's in support of its damages contain merely conclusory statements regarding the damages sustained by Fireman's, which can not support an award of unliquidated damages in a default

23

judgment proceeding.

## IX. PRAYER

For these reasons, Hofer Builders, Inc., Appellant, requests that this court hold that the trial court's denial of Hofer's Motion for New Trial was an abuse of discretion, vacate the trial court's default judgment, and remand the case to the trial court for a new trial. However, if this court does not hold that the trial court's denial of Hofer's Motion for New Trial was an abuse of discretion, vacate the trial court's default judgment, and remand the case to the trial court for a new trial, Appellant requests that this court hold that the evidence in support of the trial court's unliquidated damage award is insufficient, vacate the unliquidated damages award, and remand the case to the trial court for a hearing on damages. Appellant also requests any other relief to which he may be entitled.

## X. CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing Appellant's Brief has been served on the following counsel of record via facsimile on June 3, 2015:

Jeffrey S. Reddall
THE LAW OFFICE OF JEFFREY S. REDDALL
One Sugar Creek Center Blvd., Suite 925
Sugar Land, Texas 77478
*Facsimile: (281) 313-6803*

*[signature]*

Edward S. Cox

**Certificate of Compliance with Texas Rule of Appellate Procedure 9.4(i)**

The undersigned hereby certifies that this document contains 4,922 words, as indicated by the word-count function of the computer program used to prepare it, and excluding the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, as provided by Appellate Rule 9.4(i).

*[signature]*

Edward S. Cox, Attorney for Appellant

# XI. **APPENDIX IN SUPPORT OF APPELLANT'S BRIEF**

Appellant Hofer Builders, Inc. hereby submits this Appendix in Support of his Appellant's Brief.

## Index

| Description | Appendix Page No. |
|---|---|
| Trial Court's Judgment signed December 8, 2014 | A1 |
| Trial Court's Order signed February 10, 2015 | A3 |
| TEX. R. CIV. P. 243. | A4 |
| TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b). | A5 |
| TEX. CIV. PRAC. & REM. CODE § 38.001. | A7 |
| Excerpts from Clerk's Record | A8 |
| Excerpts from Reporter's Record | A44 |

No. 2014-001872-3

| FIREMAN'S FUND INSURANCE COMPANY | § | IN THE COUNTY COURT |
|---|---|---|
| AS SUBROGEE OF UNITED RENTALS, INC. | § | |
| | § | AT LAW NUMBER 3 OF |
| VS. | § | |
| | § | |
| HOFER BUILDERS, INC. | § | TARRANT COUNTY, TEXAS |

## JUDGMENT

On the 19 day of N. ember , 20.4, came to be heard the above-entitled and numbered cause where in **FIREMAN'S FUND INSURANCE COMPANY AS SUBROGEE OF UNITED RENTALS, INC.** is Plaintiff and **HOFER BUILDERS, INC.** is Defendant. Plaintiffs appeared in person and through their attorney of record and announced ready for trial. The Defendant, although having been duly and legally cited to appear and answer, failed to appear and answer, and wholly made default.

Citation was served according to law and returned to the clerk where it has remained on file for the time required by law. The Court has read the pleadings and papers on file, and is of then opinion that the allegations of Plaintiff's Original Petition have been admitted and that the cause of action is unliquidated and upon good and sufficient evidence presented to the Court finds that the Defendant is indebted to Plaintiffs in the amount of $31,550.34; reasonable attorney's fees in the amount of $12,460.31, and the amount of $5,000.00 in the event an appeals bond is filed in this matter as a reasonable attorney's fee and an additional $5,000.00 as a reasonable attorney's fee in the event a Writ of Error is filed with the Texas Supreme Court; prejudgment interest at the rate of 5% per annum from April 15, 2014, until the date of judgment; post judgment interest at the rate of 5% per annum from the date of judgment until paid; and costs of court.

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** by the Court that

SCANNED
DEC -9-2014

Plaintiff, **FIREMAN'S FUND INSURANCE COMPANY AS SUBROGEE OF UNITED RENTALS, INC.**, have and recover of and from Defendant, **HOFER BUILDERS, INC.**:

1. The principal sum of $37,418.34;

2. Reasonable attorney's fees in the amount of $12,460.31, and the amount of $5,000.00 in the event an appeals bond is filed in this matter as a reasonable attorney's fee and an additional $5,000.00 as a reasonable attorney's fee in the event a Writ of Error is filed with the Texas Supreme Court;

3. Costs of Court;

4. prejudgment interest at the rate of 5% per annum from April 15, 2014, until the date of judgment;

5. Post-judgment interest at the rate 5% per annum from the date of judgment until paid.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the parties are allowed such writs and processes as may be necessary in the collection or enforcement of this judgment.

SIGNED thi _3_ day of ___December___, 2_014_.

_____
**JUDGE PRESIDING**

**APPROVED:**

*/s/ Jeffrey S. Reddall*
**Jeffrey S. Reddall**
State Bar No. 16659200
Comerica Bank Building
One Sugar Creek Center Blvd., Suite 925
Sugar Land, Texas 77478
Tel:    (281) 242-6010
FAX:   (281) 313-6803
E-mail: jeff@reddall-law.com

**ATTORNEY FOR PLAINTIFF**

Page 21

| FIREMAN'S FUND INSURANCE COMPANY | § | IN THE COUNTY COURT |
| AS SUBROGEE OF UNITED RENTALS, INC. | § | |
| | § | AT LAW NUMBER 3 OF |
| VS. | § | |
| | § | |
| HOFER BUILDERS, INC. | § | TARRANT COUNTY, TEXAS |

## ORDER

On this day came on to be heard Defendant's Motion for New Trial. The Court, having read the papers on file and heard arguments of counsel is of the opinion that said motion should be, and is hereby in all things, DENIED.

SIGNED this 10 day of February, 2015.

_____
JUDGE PRESIDING

SCANNED

FEB 1 9 2015

**[RULE 242.  Repealed effective December 31, 1941]**


## RULE 243.  UNLIQUIDATED DEMANDS

If the cause of action is unliquidated or be not proved by an instrument in writing, the court shall hear evidence as to damages and shall render judgment therefor, unless the defendant shall demand and be entitled to a trial by jury in which case the judgment by default shall be noted, a writ of inquiry awarded, and the cause entered on the jury docket.


## RULE 244.  ON SERVICE BY PUBLICATION

Where service has been made by publication, and no answer has been filed nor appearance entered within the prescribed time, the court shall appoint an attorney to defend the suit in behalf of the defendant, and judgment shall be rendered as in other cases; but, in every such case a statement of the evidence, approved and signed by the judge, shall be filed with the papers of the cause as a part of the record thereof. The court shall allow such attorney a reasonable fee for his services, to be taxed as part of the costs.


## RULE 245.  ASSIGNMENT OF CASES FOR TRIAL

The court may set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial, or by agreement of the parties; provided, however, that when a case previously has been set for trial, the Court may reset said contested case to a later date on any reasonable notice to the parties or by agreement of the parties. Non-contested cases may be tried or disposed of at any time whether set or not, and may be set at any time for any other time.

A request for trial setting constitutes a representation that the requesting party reasonably and in good faith expects to be ready for trial by the date requested, but no additional representation concerning the completion of pretrial proceedings or of current readiness for trial shall be required in order to obtain a trial setting in a contested case.


## RULE 246.  CLERK TO GIVE NOTICE OF SETTINGS

The clerk shall keep a record in his office of all cases set for trial, and it shall be his duty to inform any non-resident attorney of the date of setting of any case upon request by mail from such attorney, accompanied by a return envelope properly addressed and stamped. Failure of the clerk to furnish such information on proper request shall be sufficient ground for continuance or for a new trial when it appears to the court that such failure has prevented the attorney from preparing or presenting his claim or defense.

**Texas Disciplinary Rules of Professional Conduct**

(Tex. Disciplinary R. Prof. Conduct, (1989) reprinted in Tex. Gov't Code Ann., tit.2, subtit. G, app.

(Vernon Supp. 1995)(State Bar Rules art. X  [[section]] 9)

I CLIENT-LAWYER RELATIONSHIP

Rule 1.04 Fees (Amended March 1, 2005)

(a)       A lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee. A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable.

(b)       Factors that may be considered in determining the reasonableness of a fee include, but not to the exclusion of other relevant factors, the following:

      (1)   the time and labor required, the novelty and difficulty of the questions

           involved, and the skill requisite to perform the legal service properly;

      (2)   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

      (3)   the fee customarily charged in the locality for similar legal services;

      (4)   the amount involved and the results obtained;

      (5)   the time limitations imposed by the client or by the circumstances;

      (6)   the nature and length of the professional relationship with the client;

      (7)    the experience, reputation, and ability of the lawyer or lawyers performing the services; and

      (8)   Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

(c)       When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

(d)       A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (e) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined. If there is to be a differentiation in the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, the percentage for each shall be stated. The agreement shall state the litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement describing the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

(e)       A lawyer shall not enter into an arrangement for, charge, or collect a contingent    fee for representing a defendant a defendant in a criminal case.

(f) A division or arrangement for division of a fee between lawyers who are not in the same firm may be made only if:

  (1) the division is:

    (i) in proportion to the professional services performed by each lawyer; or

    (ii) made, between lawyers who assume joint responsibility for the representation; and

  (2) the client consents in writing to the terms of the arrangement prior to the time of the association or referral proposed, including

    (i) the identity of all lawyers or law firms who will participate in the fee-sharing agreement, and

    (ii) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and

    (iii) the share of the fee that each lawyer or law firm will receive or, if the division is based on the proportion of services performed, the basis on which the division will be made; and

  (3) the aggregate fee does not violate paragraph (a).

(g) Every agreement that allows a lawyer or law firm to associate other counsel in the representation of a person, or to refer the person to other counsel for such representation, and that results in such an association with or referral to a different law firm or a lawyer in such a different firm, shall be confirmed by an arrangement conforming to paragraph (f). Consent by a client or a prospective client without knowledge of the information specified in subparagraph (f)(2) does not constitute a confirmation within the meaning of this rule. No attorney shall collect with any such agreement that is not confirmed in that way, except for:

  (1) the reasonable value of legal services provided to that person; and

  (2) the reasonable and necessary expenses actually incurred on behalf of that person.

(h) Paragraph (f) of this rule does not apply to payment to a former partner or associate pursuant to a separation or retirement agreement, or to a lawyer referral program certified by the State Bar of Texas in accordance with the Texas Lawyer Referral Service Quality Act, Tex. Occ. Code 952.001 et seq., or any amendments or recodifications thereof.

*Comments*

Comments developed by the Referral Fee Task Force are included here to ensure that Texas lawyers have information about the intent behind the proposals. Comments are not voted on as part of the Referendum.

Comment:

1.     A lawyer in good conscience should not charge or collect more than a reasonable fee, although he may charge less or no fee at all. The determination of the reasonableness of a fee, or of the range of reasonableness, can be a difficult question, and a standard of reasonableness is too vague and uncertain to be an appropriate standard in a disciplinary action. For this reason, paragraph (a) adopts, for disciplinary purposes only, a clearer standard: the lawyer is subject to discipline for an illegal fee or an unconscionable fee. Paragraph (a) defines an unconscionable fee in

CIVIL PRACTICE AND REMEDIES CODE

TITLE 2. TRIAL, JUDGMENT, AND APPEAL

SUBTITLE C. JUDGMENTS

CHAPTER 38. ATTORNEY'S FEES

Sec. 38.001. RECOVERY OF ATTORNEY'S FEES. A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:

     (1)  rendered services;

     (2)  performed labor;

     (3)  furnished material;

     (4)  freight or express overcharges;

     (5)  lost or damaged freight or express;

     (6)  killed or injured stock;

     (7)  a sworn account;  or

     (8)  an oral or written contract.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 38.002. PROCEDURE FOR RECOVERY OF ATTORNEY'S FEES. To recover attorney's fees under this chapter:

     (1)  the claimant must be represented by an attorney;

     (2)  the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party;  and

     (3)  payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 38.003. PRESUMPTION. It is presumed that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable. The presumption may be rebutted.

E-FILED
TARRANT COUNTY, TEXAS
4/15/2014 12:04:47 PM
MARY LOUISE GARCIA
COUNTY CLERK
BY: T.W. B.

2014-001872-3

**No. _____**

| | |
|---|---|
| **FIREMAN'S FUND INSURANCE COMPANY** § | **IN THE COUNTY COURT** |
| **AS SUBROGEE OF UNITED RENTALS, INC.** § | |
| § | **AT LAW NUMBER ___ OF** |
| **VS.** § | |
| § | |
| **HOFER BUILDERS, INC.** § | **TARRANT COUNTY, TEXAS** |

<u>**PLAINTIFF'S ORIGINAL PETITION**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, FIREMAN'S FUND INSURANCE COMPANY AS SUBROGEE OF UNITED RENTALS, INC., (hereinafter referred to as FIREMAN'S FUND), Plaintiff's in the above-entitled and numbered cause, complaining of **HOFER BUILDERS, INC.**, Defendant, and would show as follows:

**I.**

The damages sought by Plaintiff herein are within the jurisdictional limits of the Court. Plaintiff seeks only monetary relief of $100,000.00 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees.

**II.**

Plaintiff, FIREMAN'S FUND, is an insurance corporation authorized to do business under the laws of the State of Texas.

Defendant, **HOFER BUILDERS, INC.**, is a Texas corporation which may be served with process through its registered agent, Tom Hofer, 3909 Huckleberry Dr., Fort Worth, Texas 76137.

**III.**

It has become necessary to bring this lawsuit to recover the legal damages sustained by Plaintiff as a result of an incident which occurred on or about November 15,

2012, and damages Plaintiff's property. On the date in question Defendant was the renter of a JLG Forklift owned by United Rentals, Inc. While the equipment was in the exclusive control of Defendant, said equipment was damaged.

Pursuant to the rental agreement between Defendant and United Rentals, Inc., Defendant accepted full responsibility for all loss/damage to the rented equipment, regardless of cause. As a result of the loss on November 15, 2012, the equipment owned by United Rentals, Inc. was severely damaged.

**IV.**

Defendant had a contractual obligation to pay for any damage sustained by the boom lift while in her possession, irregardless of the cause. Defendant has failed to pay for the damages to the rented equipment and said failure is a breach of the contract resulting in damages to Plaintiff in the amount of $37,418.34.

**V.**

Realleging and incorporating the facts set forth above, Plaintiff would further show that Defendant was negligent in the following respects:

1.  Failing to properly use the equipment in the manner for which it was intended;

2.  Using the equipment in a manner which subjected it to a reasonably foreseeable risk of harm;

3.  Failing to secure the equipment in a safe place while not in use.

Each of the foregoing acts of negligence on the part of Defendant were the proximate cause of Plaintiff's resulting damages. Nothing said Plaintiff did or failed to do in any way caused or contributed to cause the occurrence in question.

**VI.**

Because of the damages sustained by Plaintiff in the occurrence made the basis of this suit, this cause is maintained. As a result of the damages heretofore pled, Plaintiff would show this Court that Plaintiff has been damaged in an amount within the jurisdictional limits of the Court.

**VII.**

Plaintiff, FIREMAN'S FUND, would show that it is interested in the subject matter of this suit by reason of the fact that on or about November 15, 2012, and at all times material to this cause of action, it had in full force and effect a standard Texas Insurance Policy, which policy was issued for valuable consideration to UNITED RENTALS, INC. Such policy was duly endorsed and provided for damage to or loss of the owned equipment for damages in excess of the deductible amount stated in the declarations thereto.

As a result of the incident made the basis of this lawsuit, Defendant's breach of the rental agreement, and Defendant's negligence, as described herein, Plaintiff, FIREMAN'S FUND, was called upon to pay and did pay for the damages to the equipment owned by UNITED RENTALS, INC. UNITED RENTALS, INC.'S vehicle was damaged in the amount of $37,418.34. On November 15, 2012, this sum of money was the reasonable cost necessary to repair UNITED RENTALS, INC.'S equipment caused by the loss. This amount also represents the difference in the fair market value of UNITED RENTALS, INC.'S equipment immediately before and immediately after the accident, for which Defendant is liable to Plaintiff.

As a result of the incident described herein, Plaintiff, FIREMAN'S FUND, was called

upon to pay, and did pay, under the physical damage coverage on the policy which was in effect at the time of the accident described herein. Plaintiff, FIREMAN'S FUND, is subrogated under the terms of the policy to the rights of UNITED RENTALS, INC. Such policy was duly endorsed and provided benefits to UNITED RENTALS, INC. in the amount of $37,418.34, for which sum Plaintiff, FIREMAN'S FUND, affirmatively alleges a cause of action and prays for judgment against Defendant.

**VII.**

Realleging and incorporating herein all facts and causes of action heretofore stated, Plaintiff would show that Defendant has been notified of the claims against it by Plaintiff in writing more than thirty (30) days prior to the recovery under these causes of action and demand has been made upon Defendant for the reimbursement of Plaintiff's damages. Despite this notification, Defendant has failed and refused, and still fails and refuses to make Plaintiff whole. Therefore, Plaintiff has been compelled to employ the services of the undersigned attorney to prosecute this action and has agreed to pay him a reasonable fee for his services necessarily rendered and to be rendered in prosecuting these claims against Defendant. For such services, Plaintiff requests recovery in at least the sum of $12,460.31, in accordance with Chapter 38, Texas Civil Practice and Remedies Code. Plaintiff further requests an additional $5,000.00 in the event an appeals bond is filed in this matter as a reasonable attorney's fee and an additional $5,000.00 as a reasonable attorney's fee in the event a Writ of Error is filed with the Texas Supreme Court.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that citation be issued, that upon legal trial or hearing of this cause judgment be rendered for Plaintiffs as prayed for, and that Plaintiff's be allowed to recover from Defendant the amount of $37,418.34 for

property damages; reasonable attorneys fees in the amount of $12,460.31; for pre-judgment interest from the date of the accident to the time of trial; for post-judgment interest as allowed by law; and for such other and further relief, both general and special, at law or in equity, to which Plaintiff may show itself justly entitled.

Respectfully submitted,

*/s/ Jeffrey S. Reddall*

**Jeffrey S. Reddall**
State Bar No. 16659200
Comerica Bank Building
One Sugar Creek Center Blvd., Suite 925
Sugar Land, Texas 77478
Tel:    (281) 242-6010
FAX:   (281) 313-6803
E-mail: jeff@reddall-law.com

**ATTORNEY FOR PLAINTIFF**

E-FILED
TARRANT COUNTY, TEXAS
11/18/2014 1:31:41 PM
MARY LOUISE GARCIA
COUNTY CLERK
BY: M.W. B.

No. 2014-001872-3

| | | |
|---|---|---|
| FIREMAN'S FUND INSURANCE COMPANY | § | IN THE COUNTY COURT |
| AS SUBROGEE OF UNITED RENTALS, INC. | § | |
| | § | AT LAW NUMBER 3 OF |
| VS. | § | |
| | § | |
| HOFER BUILDERS, INC. | § | TARRANT COUNTY, TEXAS |

## PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

COMES NOW, **FIREMAN'S FUND INSURANCE COMPANY AS SUBROGEE OF UNITED RENTALS, INC.**, Plaintiff in the above-entitled and numbered cause, (hereinafter referred to as Movant), and moves for a default judgment against **HOFER BUILDERS, INC.**, Defendant, and in support thereof would show as follows:

I.

On or about May 5, 2014, Defendant was served with citation along with Plaintiff's Original Petition. Citation along with the Officer's Return were returned to the Court and have been on file in this matter for the requisite period of time. Defendant has failed to appear and answer in this matter and wholly made default. Defendant's failure to timely appear and answer herein has resulted in his admitting liability in this matter.

Defendant's last known address is contained in the Certificate of Last Known Address attached hereto as Exhibit A.

The damages in Plaintiff's Original Petition are unliquidated. Therefore, Plaintiff attaches hereto as Exhibit B attaches an affidavit to prove the amount of damages and the causal nexus. The Court can award damages based upon affidavits without holding an evidentiary hearing.

Plaintiff has incurred attorney's fees in connection with the prosecution of this matter. Attached hereto as Exhibit C is an affidavit of the undersigned attorney attesting to the

reasonable and necessary attorney's fees incurred by Plaintiff herein.

**WHEREFORE, PREMISES CONSIDERED,** Movants pray that:

1.    the Court set this matter for a hearing or a submission date;

2.    Movant be granted judgment against;

3.    Movant be granted such other and further relief, special or general, legal or equitable, as may be shown that Movant is justly entitled to receive.

Respectfully submitted,

/s/ Jeffrey S. Reddall
**Jeffrey S. Reddall**
State Bar No. 16659200
Comerica Bank Building
One Sugar Creek Center Blvd., Suite 925
Sugar Land, Texas 77478
Tel:    (281) 242-6010
FAX:   (281) 313-6803
E-mail: jeff@reddall-law.com

**ATTORNEY FOR MOVANT/PLAINTIFF**

**CERTIFICATE OF SERVICE**

I, Jeffrey S. Reddall, do hereby certify that a true and correct copy of the foregoing Plaintiff's Motion for Default Judgment was this day been delivered to all parties or their respective counsel of record by certified mail, return receipt requested.

**SIGNED** this 13th day of November, 2014.

/s/ Jeffrey S. Reddall

| FIREMAN'S FUND INSURANCE COMPANY | § | IN THE COUNTY COURT |
| AS SUBROGEE OF UNITED RENTALS, INC. | § | |
| | § | AT LAW NUMBER 3 OF |
| VS. | § | |
| | § | |
| HOFER BUILDERS, INC. | § | TARRANT COUNTY, TEXAS |

## CERTIFICATE OF LAST KNOWN ADDRESS

**TO THE CLERK OF SAID COURT:**

**COMES NOW**, Plaintiffs in the above-entitled and numbered cause, and certify that the last known mailing address for **HOFER BUILDERS, INC.**, Defendant in the above-entitled and numbered cause, against whom a default judgment has been rendered is as follows:

**HOFER BUILDERS, INC.**
3909 Huckleberry Dr.
Fort Worth, Texas 76137

Respectfully submitted,

/s/ *Jeffrey S. Reddall*

**Jeffrey S. Reddall**
State Bar No. 16659200
Comerica Bank Building
One Sugar Creek Center Blvd., Suite 925
Sugar Land, Texas 77478
Tel:    (281) 242-6010
FAX:   (281) 313-6803
E-mail: jeff@reddall-law.com

**ATTORNEY FOR PLAINTIFF**

EXHIBIT A

No. 2014-001872-3

| | | |
|---|---|---|
| FIREMAN'S FUND INSURANCE | § | IN THE COUNTY COURT |
| COMPANY AS SUBROGEE OF | § | |
| UNITED RENTALS, INC. | § | AT LAW NUMBER 3 OF |
| | § | |
| VS. | § | |
| | § | |
| HOFER BUILDERS, INC. | § | TARRANT COUNTY, TEXAS |

## AFFIDAVIT FOR AUTHENTICATION OF BUSINESS RECORDS

STATE OF Missouri }

COUNTY OF St Charles }

BEFORE ME, the undersigned authority, personally appeared Darian Puga, who, being by me duly sworn, deposed and said:

1.  "My name is DARIAN PUGA. I am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts stated in it.

2.  "I am the person in charge of the records of Fireman's Fund Insurance Company. As part of the duties of my position, I am the custodian of records for this business.

3.  "The records attached to this affidavit provide an itemized statement of the damages sustained by Fireman's Fund Insurance Company as a result of the occurrence made the basis of this lawsuit. The attached records are kept in the regular course of its business. The memoranda, reports, notations, and entries contained in these records were made at or near the time of the act, event, condition, opinion or diagnosis recorded, or reasonably soon thereafter. It was the regular course of that business for an employee or representative of the business with knowledge of the act, event, condition, opinion or diagnosis recorded to make the memoranda, reports, notations, and entries contained in these records, or to transmit information concerning these matters to other employees or representatives of the business designated to receive the information for the purpose of including it in the records of the business.

4.  "The records attached to this affidavit are exact duplicates of the originals.

5.  "The amount of reasonable and necessary damages sustained by Fireman's Fund Insurance Company as a result of the occurrence made the basis of this lawsuit is $37,418.34."

Exhibit B

Page 13



**AFFIANT**

**SUBSCRIBED AND SWORN TO BEFORE ME** on the _3rd_ day of _November_ , 20_14_ , to certify which witness my hand and official seal.

RONDA K. WIECHENS
My Commission Expires
May 2, 2016
St. Charles County
Commission #12381728

Notary Public in and for
The State of _Missouri_
My Commission Expires: _5·2·16_



JLG Equipment Services, Inc.
441 Weber Lane
Bedford , Pa.  15522
Phone: ( 814 ) 624 - 5800
Fax: ( 814 ) 624 - 5820



# ESTIMATE

| ASSESSMENT DATE: | | 3/1/13 | | | | |
|---|---|---|---|---|---|---|
| Model Number: | | G10 - 55A | | CUSTOMER | UNITED | RENTALS |
| Serial  Number: | | 0160013078 | | | REVISED | |
| | | | | | | |
| CUSTOMER REBUILD: | | CUSTOMER | | | | |
| RENTAL: | | REPAIR | | | | |
| RESALE: | | | | | | |
| | | | | | | |
| PART NUMBER & NAME OF PART | QUANTITY | AVAILABLE | SHORT | DATE | | LIST PRICE |
| 91576007S - OUTTER MID BOOM | 1 | | | | | $9,762.78 |
| 91576006S - INNER MID BOOM - replaced | 1 | | | | | $11,998.65 |
| 1001110107 - CHAIN REPLACEMENT KIT | 1 | | | | | $5,500.00 |
| 2910980 - WEAR PAD REPLACEMENT KIT | 1 | | | | | $3,303.03 |
| 91513210 - DECAL | 1 | | | | | $3.47 |
| 91363203 - DECAL | 1 | | | | | $499.63 |
| 84718959 - HOSE ASSY | 2 @ 105.21 | | | | | $210.42 |
| 91166032 - HOSE CARRIER | 1 | | | | | $1,021.92 |
| 91166067 - HOSE CARRIER | 1 | | | | | $666.63 |
| 91161136 - PIN | 1 | | | | | $61.23 |
| 91161137 - PIN | 1 | | | | | $52.02 |
| 88581149 - RETAINING RING | 4 @ 1.47 | | | | | $5.88 |
| 3423247 - PIN | 1 | | | | | $458.07 |
| 2915215 - SHEAVE KIT | 1 | | | | | $46.16 |
| 91161267 - PIN | 3 @ 131.06 | | | | | $393.18 |
| 91165022 - ROLLER | 5 @ 323.76 | | | | | $1,618.80 |
| 1001123015 - VALVE | 1 | | | | | $268.91 |
| 1001123014 - VALVE | 1 | | | | | $355.69 |
| 7026467 - SEAL KIT | 1 | | | | | $359.77 |
| 1001103314S - FLY BOOM SECTION | 1 | | | | | $17,822.18 |
| | | | | PARTS | | $54,408.42 |
| | | | | W / DISCOUNT | | $32,917.09 |
| LABOR REQUIRED -   48.5 HRS | | | | LABOR | | $4,001.25 |
| OUTSIDE CHARGE FOR TELE CYL INSPECTION & REBUILD | | | | CYL | | $500.00 |
| | | | | TOTAL | | $37,418.34 |
| | | | | | | |
| INSPECT FOR DAMAGE - NOTIFY IF ANY DAMAGE FOUND | | | | | | |
| INSPECT ALL BOOM SECTIONS | | | | | | |
| INSPECT ALL CYLINDERS | | | | | | |
| INSPECT CARRIAGE & FORKS | | | | | | |
| INSPECT FRAME & AXLES | | | | | | |
| CHECK ALL FUNCTIONS FOR PROPER OPERATION | | | | | | |

Customer agrees that upon its approval ServicePLUS is authorized to perform the work set forth in this Estimate at the prices set forth above.

```
Check Ref No          0042690      Check Replaces
Check Date             2/20/13     Check Amount                    16,635.93
Check Status          E            Check Accept Amount                   .00
Check Type                         Check Printed        P
Check Stop ID                      Check Stop Date        0/00/00
Check Stop Reason                  Check                  00142737
Bank                  A1           Check Distribution   M
Invoice #                          Invoice Date           0/00/00

Mail Address          UNITED RENTALS INC

                      P.O. BOX 4366


                      MODESTO              CA 95352
Payee Name            UNITED RENTALS INC

In Payment Of         677-578994RA
```

F3=Exit   F12=Cancel

| | | | |
|---|---|---|---|
| Check Ref No | 0045152 | Check Replaces | |
| Check Date | 4/05/13 | Check Amount | 10,782.41 |
| Check Status | E | Check Accept Amount | .00 |
| Check Type | | Check Printed | P |
| Check Stop ID | | Check Stop Date | 0/00/00 |
| Check Stop Reason | | Check | 00145148 |
| Bank | A1 | Check Distribution | M |
| Invoice # | | Invoice Date | 0/00/00 |

Mail Address       UNITED RENTALS INC

                   P.O. BOX 4366

                   MODESTO           CA 95352

Payee Name        UNITED RENTALS INC

In Payment Of     677-578994RA

F3=Exit   F12=Cancel

| | | |
|---|---|---|
| FIREMAN'S FUND INSURANCE COMPANY | § | IN THE COUNTY COURT |
| AS SUBROGEE OF UNITED RENTALS, INC. | § | |
| | § | AT LAW NUMBER 3 OF |
| VS. | § | |
| | § | |
| HOFER BUILDERS, INC. | § | TARRANT COUNTY, TEXAS |

## AFFIDAVIT FOR ATTORNEY'S FEES

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF FORT BEND | § |

**BEFORE ME**, the undersigned authority, on this day personally appeared Jeffrey S. Reddall, known to me to be a credible person and who, after being by me first duly sworn, on oath deposed and said:

"I, Jeffrey S. Reddall, am attorney of record for the Plaintiff in the above-entitled and numbered cause. I am over twenty-one (21) years of age of sound mind, and never convicted of a crime or offense. I am authorized to make this Affidavit, have personal knowledge of the facts hereinafter stated and they are all true and correct."

"I am a duly licensed attorney authorized to practice before all Courts of the State of Texas and I am familiar with the customary and usual attorney's fees charged in the District, County and Justice Courts of Texas."

"As counsel in the above-styled and numbered cause, I have knowledge as to the reasonable and customary fees charged by attorneys in the Houston area for services in cases of the same or similar nature as in the above-entitled and styled cause. It is a reasonable and accepted practice in Texas, that the minimum fee contract for such legal representation should be 33 1/3% of the amount of the Plaintiff's claim.

"The amount of reasonable attorney's fees in this case which is in accordance with local practice is the sum of at least $12,460.31 through the trial of this matter. It is also reasonable and customary that the necessary attorney's fees in the event of an appeal to the Court of Appeals is $5,000.00, and in the event a writ is filed with the Texas Supreme Court is an additional $5,000.00."

**EXHIBIT C**

_____
JEFFREY S. REDDALL

**SUBSCRIBED AND SWORN TO BEFORE ME**, on this 13th day of _November_ , 2014 , to certify which witness my hand and official seal.

_Gloria M. Reddall_
Notary Public in and for
The State of Texas

Gloria M Reddall
My Commission Expires
02/21/2016

E-FILED
TARRANT COUNTY, TEXAS
1/5/2015 3:17:19 PM
MARY LOUISE GARCIA
COUNTY CLERK
BY: M.W. B.

CAUSE NO. 2014-001872-3

| | | |
|---|---|---|
| FIREMAN'S FUND INSURANCE | § | IN THE COUNTY COURT |
| COMPANY AS SUBROGEE OF | § | |
| UNITED RENTALS, INC. | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | AT LAW NO. 3 |
| | § | |
| HOFER BUILDERS, INC., | § | |
|     Defendant. | § | TARRANT COUNTY, TEXAS |

## DEFENDANT'S MOTION FOR NEW TRIAL

Defendant Hofer Builders, Inc. ("Hofer") respectfully submits this motion for new trial, and asks the Court to grant it a new trial in the interest of fairness and in accordance with the law.

Defendant's Motion is supported by the attached sworn affidavit of Tom Hofer, which is attached hereto as Exhibit A and is incorporated herein by reference for all purposes.

### I.    Background

1. This subrogation claim arises from a defective forklift rented by Hofer from United Rentals, Inc. ("United"). Hofer rented the forklift to use on a commercial construction project. While using the forklift to move some garbage, the extended arm of the forklift cracked, causing the boom to collapse.[1] United made a claim on its insurance policy with Fireman's Fund Insurance Company ("Fireman's") for the damage to the equipment, and Fireman's filed this suit to recover the amounts that it paid United for the damage to the forklift.

---

[1] *See* Tom Hofer Aff. ¶ 4.

**Plaintiffs' Motion for New Trial**                                      Page 1

2. Upon being notified of the lawsuit, Hofer notified its insurance carrier, who undertook all communications with counsel for Fireman's.[2] Hofer believed its insurance carrier would defend the lawsuit on its behalf.[3] Hofer's insurance carrier obtained an indefinite extension of the answer deadline from Fireman's counsel in order to provide time to adequately investigate the claim and determine whether it had a duty to defend Hofer. After investigating, Hofer's insurance carrier determined the loss was not covered under Hofer's policy, and refused coverage.

3. The carrier notified Hofer and Fireman's counsel of its decision to refuse coverage and advised Hofer that it would have "plenty of time" to seek out counsel to represent it in the lawsuit.[4] Fireman's counsel communicated to Hofer's insurance carrier on October 6, 2014, after the carrier determined it would not provide a defense that if Hofer did not file an answer to the lawsuit by October 10, 2014, a Motion for Default Judgment would be filed. Hofer's insurance carrier confirmed to Fireman's counsel on October 7, 2014, that it had relayed the message regarding Hofer's answer deadline to Hofer, but it did not.[5] Hofer was not aware of the current status of the litigation and was not informed by anyone that a Motion for Default Judgment had been filed and set for hearing on November 19, 2014.[6] An Order Granting Plaintiff's Motion for Default Judgment was entered on December 8, 2014.

---

[2] *See* Tom Hofer Aff. ¶ 5.
[3] *See* Tom Hofer Aff. ¶ 5.
[4] *See* Tom Hofer Aff. ¶ 8.
[5] *See* Tom Hofer Aff. ¶ 9.
[6] *See* Tom Hofer Aff. ¶ 9.

4. Had Hofer been properly notified by its insurance carrier or Fireman's counsel, Hofer would have taken the necessary steps to retain counsel and answer the lawsuit by Fireman's deadline. Hofer believes that none of its acts or omissions caused or contributed to the alleged damages sustained by United Rentals' forklift, and that the damage was caused by a product defect in the forklift, i.e. a malfunctioning skid plate on the forklift boom that permitted the boom to overextend and collapse. Given these facts, Hofer satisfies the *Craddock* elements and the Court must, under Texas law, grant Hofer a new trial.

## II. Arguments and Authorities

5. When a defendant does not file an answer because of a mistake or accident, the default judgment should be set aside and a new trial ordered in any case in which the defaulting party can satisfy the three elements set forth in *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939): 1) the party's failure to file a response was not intentional or the result of conscious indifference; 2) the party "sets up" at least one defense that, if proven, counters the pleading at issue; and 3) the granting of a new trial will not unfairly prejudice the opposing party.[7]

### A. Defendant's failure to respond was not intentional nor the result of conscious indifference.

6. Under *Craddock*, when the defaulting party fails to answer in a timely manner due to accident or mistake and not as the result of an intention not to respond, then, upon the defaulting party's motion, the court must set aside the resulting judgment and

---

[7] *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939).

grant a new trial. [8] In order to satisfy the first Craddock element, a "defaulting party must provide some excuse, but not necessarily a good excuse, for failing to answer in a timely manner."[9] The dispositive inquiry is whether the defaulting party intended to not respond or was consciously indifferent to responding – as opposed to mistakenly or accidentally not responding.[10] "The absence of an intentional failure to answer is the controlling factor under this analysis."[11]

7. Here, Hofer's failure to answer plainly was not intentional or the result of conscious indifference. Initially, Hofer believed its insurance company was providing a defense to the lawsuit. Hofers's insurance company dealt directly with counsel for Fireman's on Hofer's behalf in this case prior to issuing its reservation of rights letter and denying coverage of the lawsuit.

8. Fireman's was notified of the insurance carrier's refusal to defend and failed to notify Hofer of the new answer deadline, its Motion for Default Judgment, or the hearing scheduled on November 19, 2014.[12] The first time Hofer learned of its answer deadline, Fireman's Motion, and the hearing was on or about December 12, 2014 when it received the signed Judgment from the Court.[13] Hofer was very surprised to learn

---

[8] *See Craddock*, 133 S.W.2d at, 126; *State Employees Worker's Compensation Division v. Evans*, 889 S.W.2d 266 (Tex. 1994) (Where the Craddock elements are satisfied, the court has no discretion but to set aside the judgment.).
[9] *In the Interest of A.P.P.*, 74 S.W.3d 570, 573 (Tex.App.—Corpus Christi 2002, pet. denied), (citing *Norton v. Martinez*, 935 S.W.2d 898, 901 (Tex.App.—San Antonio 1996, no writ); *Gotcher v. Barnett*, 757 S.W.2d 398, 401 (Tex.App.—Houston 1988, no writ)).
[10] *Craddock* 133 S.W.2d at 125.
[11] *In the Interest of A.P.P.*, 74 S.W.3d at 573 (citing *Craddock*, 133 S.W.2d at 125).
[12] *See* Tom Hofer Aff. ¶¶ 7, 9.
[13] *See* Tom Hofer Aff. ¶ 10.

**Plaintiffs' Motion for New Trial**                                                                 **Page 4**

that a hearing had been held and that a judgment had been entered.[14] Hofer immediately retained the undersigned counsel to file a Motion for New Trial on its behalf.[15]

9. Hofer's failure to answer was not intentional or the result of conscious indifference. Hofer believed its answer deadline continued to be extended to allow time to retain counsel, and had no notice of Fireman's pending Motion or the scheduled hearing.[16] Had Hofer been aware of its answer deadline, Fireman's Motion for Default Judgment, or the scheduled hearing date, it would have taken the appropriate steps to ensure that an answer was filed. Hofer satisfies the first *Craddock* element.[17]

### B. Defendant has a meritorious defense to Plaintiff's Original Petition

10. If a party alleges facts that, if true, would constitute a meritorious defense to the opposition's pleading, then the party has satisfied the second *Craddock* element.[18] A meritorious defense is one that, if proven, would cause a different result, but not necessarily the opposite result.[19] The defaulting party need not submit affidavit evidence of its meritorious defense, and no contradictory affidavits from the other party will be considered.[20]

11. **Products Liability.** Fireman's claims arise out of alleged damage to commercial construction equipment Hofer rented from United. However, Hofer would show the

---

[14] *See* Tom Hofer Aff. ¶¶ 10-11.
[15] *See* Tom Hofer Aff. ¶¶ 11.
[16] *See* Tom Hofer Aff. ¶¶ 8-9.
[17] *Lopez v. Lopez*, 757 S.W.2d 721, 723 (Tex. 1988); *Texas Sting, Ltd. v. R. B. Foods*, 82 S.W.3d 644, 650 (Tex.App.—San Antonio 2002, pet. denied) (When a party receives no notice of a trial setting, they have satisfied the first prong of Craddock and need not meet the remaining two).
[18] *Strackbein v. Prewitt*, 671 S.W.2d 37, 39 (Tex. 1984); *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966).
[19] *Liepelt v. Oliveira*, 818 S.W.2d 75, 77 (Tex.App.—Corpus Christi 1991, no writ).
[20] *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 391 (Tex. 1993).

Plaintiffs' Motion for New Trial                                                    Page 5

equipment was defective when rented from United as the result of a defect in the design or manufacturing process. This defect was the only, or, at a minimum, the superseding, cause of the equipment failure and resulting damage, not any action of Hofer.

**C. The Court's granting of a new trial will not unfairly prejudice Defendant.**

12. In the final element Defendant must show that the Court's granting of a new trial will not unfairly prejudice the Plaintiff. The purpose of this element is to protect the Plaintiff against the sort of undue delay or injury that would disadvantage him in presenting the merits of his case at a new trial, such as loss of witnesses or other valuable evidence.[21]

13. The final hearing resulting in entry of a default judgment was a month ago. There is no risk that witnesses or other evidence would be compromised by virtue of the Court granting a new trial when so little time has passed. Moreover, there is no reasonable argument that Fireman's would be prevented from presenting the merits of its case at trial. Finally, Hofer is prepared to proceed expeditiously to trial. Hofer has satisfied the third *Craddock* element.

### III. Prayer

FOR THESE REASONS, Defendant, Hofer Builders, Inc. prays that its Motion for New Trial be granted and that it have such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

THE COX LAW FIRM, PLLC

---

[21] *State Employees Worker's Compensation Division*, 889 S.W.2d at 270.

By: _____
Edward S. Cox
State Bar No. 00793560
Mary R. Torres
State Bar No. 24086084
1300 Norwood Dr., Suite 100
Bedford, TX 76022
Telephone: (817) 860-9200
Facsimile: (817) 860-9205

## ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

I hereby certify that on December 17, 2014, I contacted Jeffrey S. Reddall, attorney of record for Plaintiff, by telephone to discuss the merits of this Motion for New Trial with him. He advised that Plaintiff would be opposed to such motion. Therefore, this matter is presented to the Court for consideration.

_____
Mary R. Torres

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on the following counsel of record via facsimile on January 5, 2015.

Jeffrey S. Reddall
THE LAW OFFICE OF JEFFREY S. REDDALL
One Sugar Creek Center Blvd., Suite 925
Sugar Land, Texas 77478
*Facsimile: (281) 313-6803*

_____
Mary R. Torres

Plaintiffs' Motion for New Trial

Page 7

CAUSE NO. 2014-001872-3

| FIREMAN'S FUND INSURANCE | § | IN THE COUNTY COURT |
| COMPANY AS SUBROGEE OF | § | |
| UNITED RENTALS, INC. | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | AT LAW NO. 3 |
| | § | |
| HOFER BUILDERS, INC., | § | |
|     Defendant. | § | TARRANT COUNTY, TEXAS |

## AFFIDAVIT OF TOM HOFER

| STATE OF TEXAS | § |
| | § |
| COUNTY OF TARRANT | § |

BEFORE ME, the undersigned authority, a Notary Public in and for said county and state, on this day personally appeared Tom Hofer, being by me first duly sworn upon his oath, deposed and stated as follows:

1. "My name is Tom Hofer. I am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts stated herein. I am fully competent and able to testify herein. Further, every fact and statement contained in this affidavit is within my personal knowledge and is true and correct.

2. I am the President of Hofer Builders, Inc. As such, I am familiar with the company's operations and bear ultimate responsibility for same. I interacted directly and indirectly (through a project manager, Randal Harrison and insurance agent, Chad Woodard) with the parties identified below and am familiar with the parties' dealings and the events I describe herein.

3. In 2012, Hofer Builders, Inc. contracted with United Rentals, Inc. for rental of a forklift to use in a commercial construction project. Pursuant to that rental agreement, Hofer Builders, Inc. paid United Rentals, Inc. $3,000.00 per month.

4. While being used to lift a small dumpster of garbage, the boom of the forklift cracked and broke, causing it, and the load it was lifting, to fall.

5. After paying its insured's claim for the damage to the forklift, Fireman's Fund Insurance Company ("Fireman's") filed this lawsuit, which I became aware of in May,

Plaintiffs' Motion for New Trial

PLAINTIFF'S
EXHIBIT
A

Page 8

2014. Believing the damages claimed to be covered under the insurance policy held by Hofer Builders, Inc., I promptly notified my insurance carrier of the suit.

6. Joel Voelkner was assigned as the adjuster on the claim, and undertook all direct communications with counsel for Fireman's.

7. After conducting an investigation into the claim, Hofer Builders, Inc.'s insurance provider notified Fireman's and Hofer Builders, Inc. in September, 2014 that its insurance policy did not afford coverage for the claim, and therefore a defense to the lawsuit would not be provided.

8. Mr. Voelkner advised me that Hofer Builders, Inc. would have "plenty of time" to retain counsel to defend it in the lawsuit because he had obtained an extension of the answer deadline, and there was no answer deadline in place.

9. Unbeknownst to me, Fireman's attorney, Jeff Reddall, filed a Motion for Default Judgment on or about November 13, 2014. Mr. Reddall never contacted me or informed me of this motion and neither did anyone from his office. Furthermore, I was not aware that the Court set Plaintiff's Motion for Default Judgment for hearing on November 19, 2014. Mr. Reddall did not contact me or have anyone from his office contact me with this information. In fact I received no communication from Mr. Reddall or his office after being notified Hofer Builders, Inc's insurance company would no longer be involved in the case.

10. The first time I learned of Plaintiff's Motion for Default Judgment and the hearing held on November 19, 2014 was when I received a letter from the Court enclosing the Judgment. I received the Court's letter on or about December 12, 2014.

11. I was very surprised by the Judgment and I immediately contacted Edward S. Cox of The Cox Law Firm, PLLC to represent Hofer Builders, Inc. in this matter."

Further affiant sayeth not.

_____
Tom Hofer

SUBSCRIBED AND SWORN TO BEFORE ME this 5 day of January, 2015.

BRANDI GALE HOFER
Notary Public, State of Texas
My Commission Expires
May 01, 2017

_____
Notary Public in and for the State of Texas

E-FILED
TARRANT COUNTY, TEXAS
1/14/2015 11:25:24 AM
MARY LOUISE GARCIA
COUNTY CLERK
BY: M.W. B.

No. 2014-001872-3

| FIREMAN'S FUND INSURANCE COMPANY | § | IN THE COUNTY COURT |
| AS SUBROGEE OF UNITED RENTALS, INC. | § | |
| | § | AT LAW NUMBER 3 OF |
| VS. | § | |
| | § | |
| HOFER BUILDERS, INC. | § | TARRANT COUNTY, TEXAS |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIN FOR NEW TRIAL**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, FIREMAN'S FUND INSURANCE COMPANY AS SUBROGEE OF

**UNITEDD RENTAL'S, INC.**, Plaintiff herein, and files this its response to Defendant's

Motion for New Trial, and in support thereof would show as follows:

I.

**Procedural History**

Plaintiff filed suit on April 15, 2014, and requested citation and service thereon.

Defendant was served on May 5, 2014. As set forth in the affidavit of Jeffrey S. Reddall,

attached hereto as Exhibit A and incorporated herein by reference as though fully set

forth verbatim, on May 12, 2014, Plaintiff's counsel and Defendant's insurance adjuster,

Joel Voelkner, entered into an agreement to extend Defendant's answer date up to and

including June 26, 2014, in order to give him time to investigate the claim. On June 27,

2014, that deadline was extended up to and including July 28, 2014. On October 1, 2014,

Plaintiff's counsel called Defendant's agent to inquire as to the status of his investigation.

Mr. Voelkner was not available and counsel left him a voice mail message advising him

that counsel would either need to move forward with a default judgment against

Defendant, or be contacted by an attorney on its behalf. On October 6, 2014, counsel

followed up that message with an e-mail to Mr. Voelkner setting a deadline for Defendant

to file its Answer by 5:00 p.m. on Friday, October 10, 2014, and further advising that a motion for default judgment would be filed if no Answer was filed by then. On October 7, 2014, Mr. Voelkner sent counsel an e-mail advising that he had made the Defendant aware of the deadline. On October 13, 2014, Mr. Voelkner sent counsel a second e-mail advising that on October 7, 2014, he made the Defendant aware of the deadline for filing its Answer by this deadline.

Plaintiff filed its Motion for Default Judgment on November 19, 2014.

## II.

## Argument and Authorities

When a default judgment is rendered against a defendant who had notice of the suit but did not file an answer to the suit the defendant's motion for new trial should allege the three elements set forth in *Craddock v. Sunshine Bus Lines, Inc., 133 S.W.2d 124 (Tex. 1939)*:

1. **Mistake or Accident** - The defendant must show that its failure to file an answer was not intentional or the result of conscious indifference but was due to mistake or accident. The critical question is why the defendant did not appear. *Sutherland v. Spencer, 376 S.W.2d 752 (Tex. 2012)*. In its motion and supporting affidavit, Defendant claims it was not informed of the deadline imposed by Plaintiff's counsel for the filing of its Answer. This claim, however, is refuted by the e-mail correspondence between Plaintiff's counsel and Mr. Voelkner. However, assuming arguendo, that Defendant did not receive notice of said deadline from Mr. Voelkner, reliance upon an insurance agent to file an answer does not satisfy the test (of mistake or accident). *Holt Atherton, Indus. V. Heine, 835 S.W.2d 80*

*(Tex. 1992).* Defendant in its motion has failed to provide any proof that its agent, Mr. Volekner, was not guilty of conscious indifference. *Heine, 835 S.W.2d @ 83.* Defendant merely alleges in its motion and supporting affidavit that it believed the answer deadline continued to be extended to allow time for it to retain counsel. However, an affidavit containing only general statements without dates and other verifying information does not disprove its conscious indifference. *Liberty Mut. Fire Ins. V. Ybarra, 751 S.W.2d 615, 617-618 (Tex.App. – El Paso 1988, no writ); Sheraton Homes, Inc. v Shipley, 137 S.W.3d 379, 382 (Tex.App. – Dallas 2004, no pet.).* Defendant has failed to sustain its burden to prove its failure to file an answer in this suit was not due to conscious indifference.

2. **Meritorious Defense** – A Defendant must set up a meritorious defense in its motion for new trial. A meritorious defense is one that, if proven, would cause a different result at retrial. *Titan Indem. Co. v. Old S. Ins. Grp., 221 S.W.3d 703, 711 (Tex.App. – San Antonio 206, no pet.).* To set up a meritorious defense, the defendant must allege facts, supported by affidavits or other evidence, that would constitute a defense to the plaintiff's cause of action. *Dolgencorp v. Lerma, 288 S.W.3d 922, 925 (Tex. 2009).* In its motion for new trial Defendant alleges that a product defect in the equipment it rented from Plaintiff's insured was the sole, or superseding cause, of the loss made the basis of Plaintiff's claims. The affidavit of Tom Hofer attached to Defendant's motion, however, fails to provide any evidence supporting this allegation. Defendant has further provided no other evidence in support of its alleged meritorious defense of a product defect. Additionally, Plaintiff's cause of action, in part, was based upon a rental agreement

entered into between Defendant and Plaintiff's insured. That agreement provided in pertinent part that Defendant "shall be liable for all damages to or loss of the Equipment". Defendant's allegation of a product defect being the cause of the loss is moot since Defendant is responsible for the loss under the lease agreement. Defendant has failed to meet its burden of proof of a meritorious defense.

3. **Reimbursement** – Defendant's motion fails to set forth any statement that it is willing to reimburse Plaintiff for all reasonable expenses incurred in getting the default. *Titan Indem., 221 S.W.3d @ 712.* As such, Defendant is not entitled to a new trial.

## III.

## Conclusion

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendant's motion for new trial be denied.

Respectfully submitted,

/s/ Jeffrey S. Reddall
**Jeffrey S. Reddall**
State Bar No. 16659200
Comerica Bank Building
One Sugar Creek Center Blvd., Suite 925
Sugar Land, Texas 77478
Tel:    (281) 242-6010
FAX:   (281) 313-6803
E-mail: jeff@reddall-law.com

**ATTORNEY FOR MOVANT/PLAINTIFF**

## CERTIFICATE OF SERVICE

I, Jeffrey S. Reddall, do hereby certify that a true and correct copy of the foregoing Plaintiff's Motion for Default Judgment was this day been delivered to all parties or their respective counsel of record by certified mail, return receipt requested.

**SIGNED** this 14th day of January, 2015.

/s/ *Jeffrey S. Reddall*

| FIREMAN'S FUND INSURANCE COMPANY | § | IN THE COUNTY COURT |
|---|---|---|
| AS SUBROGEE OF UNITED RENTALS, INC. | § | |
| | § | AT LAW NUMBER 3 OF |
| VS. | § | |
| | § | |
| HOFER BUILDERS, INC. | § | TARRANT COUNTY, TEXAS |

## AFFIDAVIT FOR AUTHENTICATION OF BUSINESS RECORDS

STATE OF TEXAS }
}
COUNTY OF FORT BEND }

BEFORE ME, the undersigned authority, a Notary Public in and for the state of Texas, on this day personally appeared Jeffrey S. Reddall, who being by me duly sworn, upon his oath deposes and says:

"My name is Jeffrey S. Reddall. I am over the age of 18 years, of sound mind, and fully competent to testify as to the matters stated herein. I am the attorney for Plaintiff in this case, and I have personal knowledge of every statement herein made, and I am fully competent to testify as to the matters stated herein. Every fact and statement contained herein is within my personal knowledge and is true and correct.

On April 15, 2014, I filed Plaintiff's Original Petition in this cause and requested citation and service thereon. Defendant was served on May 5, 2014. On May 12, 2014, I entered into an agreement with Defendant's insurance adjuster, Joel Voelkner, extending Defendant's answer date up to and including June 26, 2014, in order to give him time to investigate the claim. On June 27, 2014, that deadline was extended up to and including July 28, 2014. On October 1, 2014, I called Defendant's agent to inquire as to the status of his investigation. Mr. Voelkner was not available and I left him a voice mail message advising him that I would either need to move forward with a default judgment against Defendant, or be contacted by an attorney on its behalf. On October 6, 2014, I followed up that message with an e-mail to Mr. Voelkner setting a deadline for Defendant to file its Answer by 5:00 p.m. on Friday, October 10, 2014, and further advising that a motion for default judgment would be filed if no Answer was filed by then. On October 7, 2014, Mr. Voelkner sent me an e-mail advising that he had made the Defendant aware of the deadline. On October 13, 2014, Mr. Voelkner sent me a second e-mail advising that on October 7, 2014, he made the Defendant aware of the deadline for filing its Answer by this deadline.

Defendant failed to file its Answer by the deadline set. On November 18, 2014, I filed Plaintiff's Motion for Default Judgment.

The records attached to this affidavit contain the e-mail correspondence between me



Exhibit A

and Joel Voelkner relating to Defendant's Answer. The attached records are kept in the regular course of my business. The memoranda, reports, notations, and entries contained in these records were made at or near the time of the act, event, condition, opinion or diagnosis recorded, or reasonably soon thereafter. It was the regular course of my business for an employee or representative of the business with knowledge of the act, event, condition, opinion or diagnosis recorded to make the memoranda, reports, notations, and entries contained in these records, or to transmit information concerning these matters to other employees or representatives of the business designated to receive the information for the purpose of including it in the records of the business.

Further, Affiant sayeth not.

_____
**AFFIANT**

**SUBSCRIBED AND SWORN TO BEFORE ME** on the _13th_ day of _January_, 2_015_, to certify which witness my hand and official seal.

_____
Notary Public in and for
The State of Texas
My Commission Expires: _2/21/2016_

Gloria M Reddall
My Commission Expires
02/21/2016

| | |
|---|---|
| **From:** | Voelkner, Joel <Joel.Voelkner@yorkrsg.com> |
| **Sent:** | Monday, October 13, 2014 2:23 PM |
| **To:** | Jeff Reddall |
| **Subject:** | RE: Your Claim No. ESS-1666A2; My Client: FFIC a/s/o United rentals |

Jeff,

Thanks. I made the client aware on Tuesday, the day after you sent this.

Regards,

Joel Voelkner
General Adjuster
York SLA
(469) 791-2338

No representative of the Specialized Loss Adjusting Division of York Risk Services Group, Inc. ("York"), or any consultant retained on behalf of the insurer(s) working with "York", has any authority either to bind the insurer(s) to coverage, or to interpret, waive, or alter any of the terms, conditions, or limitations of the policy. The insurer (s) reserves the right to make all decisions concerning coverage. For the avoidance of doubt, nothing that York communicates to you with respect to this matter constitutes any decision of any kind with respect to any coverage of any kind or an interpretation, waiver or alteration of any policy term, condition or limitation of any insurance policy.

---

**From:** Jeff Reddall [mailto:jeff@reddall-law.com]
**Sent:** Monday, October 06, 2014 6:22 PM
**To:** Voelkner, Joel
**Subject:** RE: Your Claim No. ESS-1666A2; My Client: FFIC a/s/o United rentals

Joel: It is my understanding that you have concluded that there is no coverage under your insured's policy for this loss. As such, I will need to proceed with the litigation against your insured. In our last conversation you indicted you were going to advise your insured of your decision and its need to defend itself in the litigation.

As you know, we have has several agreements as to the extension of the Answer date for your insured. The date under the last extension has passed. Your insured is currently in default.

Please make certain that your insured is aware of its status in the litigation. I will be proceeding with the filing of a motion for default judgment if no Answer is filed on its behalf by 5:00 p.m. on Friday October 10, 2014.

Should you have any questions please do not hesitate to call me.

Thanks, Jeff.

**LAW OFFICE OF JEFFREY S. REDDALL**
Comerica Bank Building
One Sugar Creek Center Blvd., Suite 925
Sugar Land, Texas 77478

1

Tel: (281) 242-6010
Fax: (281) 313-6803
E-mail: jeff@reddall-law.com

Confidentiality Notice: The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.

**From:** Jeff Reddall [mailto:jeff@reddall-law.com]
**Sent:** Friday, June 27, 2014 10:17 AM
**To:** 'Voelkner, Joel'
**Subject:** RE: Your Claim No. ESS-1666A2; My Client: FFIC a/s/o United rentals

Joel:  This will serve as acknowledgement of our agreement to extend the current deadline for an answer to be filed on behalf of your insured in this matter up to and including July 28, 2014 in order to give us additional time to attempt to resolve this.  Please acknowledge your agreement herewith by responding to this e-mail.

Also, would it be possible to get a copy of the policy exclusion from you?  It probably will be helpful in trying to get this settled.

Thanks  Jeff.


**LAW OFFICE OF JEFFREY S. REDDALL**
Comerica Bank Building
One Sugar Creek Center Blvd., Suite 925
Sugar Land, Texas 77478
Tel: (281) 242-6010
Fax: (281) 313-6803
E-mail: jeff@reddall-law.com

Confidentiality Notice: The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.

**From:** Voelkner, Joel [mailto:Joel.Voelkner@yorkrsg.com]
**Sent:** Monday, May 12, 2014 4:35 PM
**To:** Jeff Reddall
**Subject:** RE: Your Claim No. ESS-1666A2; My Client: FFIC a/s/o United rentals

Jeff,

Thank you for returning my call and offering the extended time period in this matter.  I look forward to receiving the other documentation you can provide in this matter.  I will communicate the new date to the insurance carrier.

Kind regards,

Joel Voelkner
General Adjuster

2

York SLA
(469) 791-2338

No representative of the Specialized Loss Adjusting Division of York Risk Services Group, Inc. ("York"), or any consultant retained on behalf of the insurer(s) working with "York", has any authority either to bind the insurer(s) to coverage, or to interpret, waive, or alter any of the terms, conditions, or limitations of the policy. The insurer (s) reserves the right to make all decisions concerning coverage. For the avoidance of doubt, nothing that York communicates to you with respect to this matter constitutes any decision of any kind with respect to any coverage of any kind or an interpretation, waiver or alteration of any policy term, condition or limitation of any insurance policy.

---

**From:** Jeff Reddall [mailto:jeff@reddall-law.com]
**Sent:** Monday, May 12, 2014 4:29 PM
**To:** Voelkner, Joel
**Subject:** Your Claim No. ESS-1666A2; My Client: FFIC a/s/o United rentals

Joel: This will confirm our agreement granting a 30 day extension for your insured to file an answer in the pending lawsuit in this matter. According to the clerk's records your insured was served on May 5, 2014. That would make the current answer date May 27, 2014. Under our agreement the new answer date will be June 26, 2014.

Please acknowledge your acceptance of this agreement by responding to this e-mail.

Thanks, Jeff.

**LAW OFFICE OF JEFFREY S. REDDALL**
Comerica Bank Building
One Sugar Creek Center Blvd., Suite 925
Sugar Land, Texas 77478
Tel: (281) 242-6010
Fax: (281) 313-6803
E-mail: jeff@reddall-law.com

Confidentiality Notice: The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.

**Jeff Reddall**

| | |
|---|---|
| **From:** | Voelkner, Joel <Joel.Voelkner@yorkrsg.com> |
| **Sent:** | Tuesday, October 7, 2014 9:43 AM |
| **To:** | Jeff Reddall |
| **Subject:** | RE: Your Claim No. ESS-1666A2; My Client: FFIC a/s/o United rentals |

Jeff,

Appreciate the email and your flexibility in this matter. I've forwarded on to the client for their review.

Kind regards,

Joel Voelkner
General Adjuster
York SLA
(469) 791-2338

No representative of the Specialized Loss Adjusting Division of York Risk Services Group, Inc. ("York"), or any consultant retained on behalf of the insurer(s) working with "York", has any authority either to bind the insurer(s) to coverage, or to interpret, waive, or alter any of the terms, conditions, or limitations of the policy. The insurer (s) reserves the right to make all decisions concerning coverage. For the avoidance of doubt, nothing that York communicates to you with respect to this matter constitutes any decision of any kind with respect to any coverage of any kind or an interpretation, waiver or alteration of any policy term, condition or limitation of any insurance policy.

**From:** Jeff Reddall [mailto:jeff@reddall-law.com]
**Sent:** Monday, October 06, 2014 6:22 PM
**To:** Voelkner, Joel
**Subject:** RE: Your Claim No. ESS-1666A2; My Client: FFIC a/s/o United rentals

Joel: It is my understanding that you have concluded that there is no coverage under your insured's policy for this loss. As such, I will need to proceed with the litigation against your insured. In our last conversation you indicted you were going to advise your insured of your decision and its need to defend itself in the litigation.

As you know, we have has several agreements as to the extension of the Answer date for your insured. The date under the last extension has passed. Your insured is currently in default.

Please make certain that your insured is aware of its status in the litigation. I will be proceeding with the filing of a motion for default judgment if no Answer is filed on its behalf by 5:00 p.m. on Friday October 10, 2014.

Should you have any questions please do not hesitate to call me.

Thanks, Jeff.

**LAW OFFICE OF JEFFREY S. REDDALL**
Comerica Bank Building
One Sugar Creek Center Blvd., Suite 925
Sugar Land, Texas 77478

1

Tel: (281) 242-6010
Fax: (281) 313-6803
E-mail: jeff@reddall-law.com

Confidentiality Notice: The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.

**From:** Jeff Reddall [mailto:jeff@reddall-law.com]
**Sent:** Friday, June 27, 2014 10:17 AM
**To:** 'Voelkner, Joel'
**Subject:** RE: Your Claim No. ESS-1666A2; My Client: FFIC a/s/o United rentals

Joel: This will serve as acknowledgement of our agreement to extend the current deadline for an answer to be filed on behalf of your insured in this matter up to and including July 28, 2014 in order to give us additional time to attempt to resolve this. Please acknowledge your agreement herewith by responding to this e-mail.

Also, would it be possible to get a copy of the policy exclusion from you? It probably will be helpful in trying to get this settled.

Thanks Jeff.


**LAW OFFICE OF JEFFREY S. REDDALL**
Comerica Bank Building
One Sugar Creek Center Blvd., Suite 925
Sugar Land, Texas 77478
Tel: (281) 242-6010
Fax: (281) 313-6803
E-mail: jeff@reddall-law.com

Confidentiality Notice: The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.

**From:** Voelkner, Joel [mailto:Joel.Voelkner@yorkrsg.com]
**Sent:** Monday, May 12, 2014 4:35 PM
**To:** Jeff Reddall
**Subject:** RE: Your Claim No. ESS-1666A2; My Client: FFIC a/s/o United rentals

Jeff,

Thank you for returning my call and offering the extended time period in this matter. I look forward to receiving the other documentation you can provide in this matter. I will communicate the new date to the insurance carrier.

Kind regards,

Joel Voelkner
General Adjuster

York SLA
(469) 791-2338

No representative of the Specialized Loss Adjusting Division of York Risk Services Group, Inc. ("York"), or any consultant retained on behalf of the insurer(s) working with "York", has any authority either to bind the insurer(s) to coverage, or to interpret, waive, or alter any of the terms, conditions, or limitations of the policy. The insurer (s) reserves the right to make all decisions concerning coverage. For the avoidance of doubt, nothing that York communicates to you with respect to this matter constitutes any decision of any kind with respect to any coverage of any kind or an interpretation, waiver or alteration of any policy term, condition or limitation of any insurance policy.

---

**From:** Jeff Reddall [mailto:jeff@reddall-law.com]
**Sent:** Monday, May 12, 2014 4:29 PM
**To:** Voelkner, Joel
**Subject:** Your Claim No. ESS-1666A2; My Client: FFIC a/s/o United rentals

Joel:  This will confirm our agreement granting a 30 day extension for your insured to file an answer in the pending lawsuit in this matter.  According to the clerk's records your insured was served on May 5, 2014.  That would make the current answer date May 27, 2014.  Under our agreement the new answer date will be June 26, 2014.

Please acknowledge your acceptance of this agreement by responding to this e-mail.

Thanks, Jeff.

**LAW OFFICE OF JEFFREY S. REDDALL**
Comerica Bank Building
One Sugar Creek Center Blvd., Suite 925
Sugar Land, Texas 77478
Tel: (281) 242-6010
Fax: (281) 313-6803
E-mail: jeff@reddall-law.com

Confidentiality Notice: The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.

that where you have a registered agent that's been served with process, you must show that that registered agent's failure was a mistake or accident rather than intentional or consciously indifferent.

And Mr. Voelkner is not the registered agent of Hofer Builders, he is simply the insurance agent. And we believe that the affidavit of Mr. Hofer establishes his mistake and belief about the extension of time.

THE COURT:  Ms. Lobes?

MS. LOBES:  Your Honor, I mean, our position in a nutshell is Mr. Hofer's company, they were on notice as of September of 2014.  And in his own affidavit in paragraph seven, there is no coverage for this claim from the insurance policy.  No funds will be provided after that notice.

Another month went by and that is when the e-mail exchanges occurred between Mr. Reddall, as well as Mr. Voelkner.  And after that period of time, another month passed before a final motion for default judgment was received.  Hofer Builders had two months to diligently search for an attorney or file an answer with the Court, or even just reach out to Mr. Reddall, which nothing was ever done.

MR. COX:  And the distinction in what counsel relies upon, paragraph seven of the affidavit, is

that while my client acknowledges receiving a coverage determination from his carrier, he specifically states that "Mr. Voelkner advised him," in paragraph eight of his affidavit, "that Hofer Builders, subsequent to that coverage denial letter in September, would have plenty of time to obtain counsel to defend it. And Mr. Voelkner obtained an extension of the answer deadline -- that no answer deadline was then in place."

That extension is corroborated by the multiple extensions that are evidenced by the affidavit of Mr. Reddall between he and Mr. Voelkner. We didn't have a case where Mr. Reddall is saying, "I never talked to any insurance agent. I don't know what you are talking about."

Clearly, there were conversations regarding an extension of which my client testifies under oath that he was advised that he had plenty of time and there was not an answer deadline that had been set. And we believe it is upon this mistaken belief that Hofer's failed to timely answer -- to answer the lawsuit and defend itself here.

MS. LOBES: The initial deadline was July of 2014. July 28th to be exact. Nothing was done between July and until the denial letter in September of 2014. After that deadline, Mr. Reddall afforded until

October 10th of 2013 for an answer to be filed, and again, nothing was ever filed or reached out to counsel to file another extension.

Saying he had plenty of time could be forever. And for all Mr. Reddall knew, the Court could place it on the dismissal docket for being non-processed in the amount of time.

MR. COX: It's evident from the fact that the citation was served upon my client when Mr. Reddall was well aware of the address at which to give my client notice.

The affidavit of Mr. Reddall is void of any documentation or evidence indicating that he made any attempt whatsoever after the Friday, October 10th deadline to advise Hofer Builders in writing that it was obliged to file an answer and would not be given any further extensions of time.

Nor is there any e-mail within those attached to Mr. Reddall's affidavit that provide any evidence that my client had any knowledge of the communications that had transpired directly between Mr. Reddall and Mr. Voelkner.

THE COURT: Well, the difficulty I've got is your client did not file an answer based on representations of an insurance agent. An insurance

adjuster, correct?

MR. COX:  Yes.  And the representations that the insurance adjuster had been able to get several extensions of the answer deadline.  And that is why my client was under the reasonable belief that he had, in fact, obtained an indefinite extension and had plenty of time to get defense counsel to appear and file an answer.

THE COURT:  So he didn't go to a lawyer. He sent it to his insurance company.  His insurance company looked at it, called somebody, got in touch with Mr. Reddall.  And --

MR. COX:  He communicated for several months, Your Honor.

THE COURT:  Right.

MR. COX:  Between May and October.  And during that time, my client was advised of the extensions that had been obtained.  And based on the conversations with Mr. Voelkner, that he had an extended period of time in which to file an answer and there was not a deadline that had been set or agreed to.

THE COURT:  So where is your -- Mr. Voelkner works for York, specialized loss adjusting, and he's taken care of this matter.  And, apparently, based on your testimony, didn't tell Mr. Hofer, "Oh, not only are we denying coverage, you've got plenty of time to

paragraph on the bottom right of that page and onto the next page.

The -- the defendant contacted counsel and was advised that if the documentation was delivered to the attorney's office that the attorney would undertake a defense. There was a communication with somebody in his office -- there was a miscommunication, and papers were not actually gathered and delivered. The defendant was under the mistaken belief that the papers had actually been delivered to the attorney and that the defense was being mounted on his behalf.

And under those circumstances, the Court found that evidence to be sufficient to rise to the level of evidencing a mistake rather than conscious indifference and granted the motion for new trial in that case.

THE COURT: And I think that is because that is an entirely reasonable thing to do is forward the papers to your attorney.

MR. COX: Well, the fact is they had not been forwarded to the lawyer.

THE COURT: Right. Right. But he was operating under the belief that he forwarded them to a lawyer.

Where in this case, what we have is a fellow that gave his to an insurance adjuster and relied

on an adjuster, who may or may not be an attorney, may or may not be responsible for the unauthorized practice of law in making extensions with Mr. Reddall. He may or may not have created a liability for York Adjusting Company.

MR. COX: And just as in Strackbein, Your Honor, where the defendant had the mistaken belief the papers had actually left his office and gone to the attorney for the defense to be provided.

In this case, my client's mistaken belief that there had been an indefinite extension of the answer and no deadline was specifically stated in his affidavit for him to file an answer, and that is why the default judgment was rendered in this case prior to him filing an answer.

And that is why we believe that this is not a case of conscious indifference, but rather a mistaken belief that in fact an indefinite extension of time had been granted by counsel for the defendant.

THE COURT: Well, so why didn't Mr. Hofer contact counsel for the defendant and say, "I want to make sure that I have an indefinite extension. I need to answer this now that my insurance company notified me the month before that they are not going to cover me"?

MR. COX: That is not the course of conduct between Mr. Reddall and the insurance adjuster. And the

communication solely and directly between those parties had been sufficient to obtain multiple extensions of the answer deadline beyond -- up until mid October when Mr. Reddall finally decided, look, you know, enough is enough. I need to have an answer filed.

At that point, the agreements that he had reached with Mr. Voelkner were not -- the termination of that extension was in no way, shape or form communicated to my client, and my client had relied upon those communications between those two parties.

THE COURT: What authority did Mr. Voelkner have to act -- to act on behalf of Mr. Hofer?

MR. COX: I believe that if we look at agency, this would be a case of apparent or implied authority to negotiate and extend the answer deadline.

And my client reasonably believed that Mr. Voelkner had obtained an indefinite extension and was under that mistaken belief at the time that the Court rendered its default judgment.

THE COURT: And what was Mr. Voelkner's bar number?

MR. COX: I do not understand Mr. Voelkner to be a licensed attorney. And as my client swears to in his affidavit, he understood Mr. Voelkner had been assigned to this claim that Mr. Hofer tendered to his

insurance carrier, that insurance carrier in its practices had reached out to plaintiff's counsel and communicated and obtained the extension via e-mail.

And I don't see anything where Mr. Voelkner represents that he is a licensed attorney; although, I do not know one way or the other whether or not he is a lawyer.

THE COURT: So how does he have agency? You are saying if I get sued and my neighbor says, "Oh, I will take care of it for you," and I hand it to my neighbor. And then three months later my neighbor says, "I am in over my head. I have too much to do, but I got an extension for you," you don't have to answer the lawsuit?

MR. COX: The distinction between your situation where you go to your neighbor, with whom you have no contractual relationship, nor does your neighbor have any duty, unless we would say your neighbor undertook to -- undertook a duty by virtue of telling you he would try to get you an extension.

The distinction is my client had a contractual relationship with his insurance carrier and submitted his claim, as he says in his affidavit pursuant to his insurance policy, and notified his carrier in accordance with his obligations under the policy.

He then believed that his carrier had a duty to him to seek to resolve that claim. And Mr. Voelkner was assigned and undertook direct communications with opposing counsel on this case and obtained extensions that were obtained. And then my client testified that he was advised that he would have plenty of time and that there -- there was no answer deadline in place.

And so I do believe that there is a duty because of the contractual insurance relationship between my client and his insurance carrier that rises above any duty that we might discuss related to you and your next door neighbor.

THE COURT: But in paragraph seven, he says, "In September of 2014, I was told by Fireman's that my insurance policy didn't afford coverage for the claim, and, therefore, defense to the lawsuit would not be provided."

So then at that point, Mr. Voelkner becomes a stranger to the transaction because he is telling him, "Hey, we have absolutely -- we don't have a dog in this fight. Good luck."

MR. COX: But that is not what Mr. Voelkner stated. He did not say, "I don't have a dog in this fight." He did not say, "You need to file an answer by

relationship?

MR. COX: Well, I believe that the policy remained in force and effect for other potential claims that might arise or asserted within the policy period. So I do believe that a contractual relationship existed.

But separate and apart from that, I believe that my client reasonably relied upon his insurance agent's assigned adjuster who communicated on multiple occasions that counsel for Fireman's Fund specifically advised my client that he had obtained an extension of the answer deadline and that there was no answer deadline in place.

And it is my belief that this evidence establishes that my client, who was under a mistaken belief, had exercised due diligence in tendering this claim to his carrier and believed that he had an opportunity to find out when an answer deadline might be, when it was set, and that he did not miss the answer deadline because of conscious indifference, but rather had a mistaken belief based on his communications with his insurance adjuster about this claim.

THE COURT: And the insurance adjuster received on October 6th an e-mail from Mr. Reddall that says, "Please make sure your insured is aware of the status of the litigation. I will be providing with the

filing a motion for default judgment if no answer is filed on his behalf by 5:00 p.m. on Friday, October 10, 2014."

To which Mr. Voelkner replies, "Thanks. I made the client aware on Tuesday the day after you sent this. Regards, Joe Voelkner, general adjuster."

MR. COX: And we have no evidence of the means by which Mr. Voelkner apparently made my client aware of the deadline. And, in fact, my client says that he was never advised of that February -- he had no knowledge of that October 10 deadline.

THE COURT: But wouldn't anybody that gets sued say, "I didn't know"? I mean, the only third party we have that you contend is acting on your guy's behalf says, "I made my client aware that you were going to take a default judgment against him."

And our last conversation -- this is Mr. Reddall -- "In our last conversation, you indicated you were going to advise your insured of your decision", and that is regarding the coverage, "And the need to defend itself in the litigation."

And so on the paperwork, do I believe Jeff, who you have told me got all these extensions and had this fiduciary relationship -- or contractual relationship at least with your client, who says, "Thanks. I made my client aware of this the day after you sent it"?

MR. COX: I believe that the lack of any communication to anyone at Hofer Builders at any point in time between Mr. Reddall and Mr. Voelkner corroborates my client's assertion that he was not aware of any answer deadline and nobody had notified him. And his company was not aware that the February 10th deadline had been set, despite what Mr. Voelkner chose to say to Mr. Reddall in that e-mail.

And that is why my client had the mistaken belief that he had an extension of time and that there was no deadline that was in place between the parties. He didn't know, Your Honor. And a lawsuit in which we believe we have a meritorious defense, because of the defect in the forklift and boom extension we have provided that broke.

And we believe that our client should be given an opportunity to defend against this claim and assert the defenses that he has for this lawsuit.

THE COURT: Any response?

MS. LOBES: Your Honor, our sole response would be Hofer Builders was put on notice in September of 2014 that there was no insurance coverage.

There was no defense to be provided for an attorney for Hofer Builders. The fact that Hofer Builders was told they had plenty of time -- and plenty of time can

still mean today had Mr. Reddall not filed the motion for default judgment.

There could still be no answer filed in this case had no default judgment been rendered against Hofer Builders. We have no idea if opposing counsel would even have been contacted by now. So the fact he claims he has plenty of time, even after the October 10th deadline passed, Mr. Reddall waited until November 13th to even file this motion for default judgment.

Hofer Builders had two and a half months to get the answer on file or at least to reach out to Mr. Reddall.

THE COURT: It wasn't even signed until December 8th.

MS. LOBES: Right.

MR. COX: Which I believe corroborates my client's understanding that there was no answer deadline. And Mr. Reddall, knowing full well of an address at which he could assess service on my client, chose not to communicate the deadline that he set.

THE COURT: Because your client had undertaken Mr. Voelkner to represent him. And when Mr. Reddall said, "Hey, make sure your client understands I am about to take a default against him. Thanks." He said, "I made the client aware."

MR. COX:  And there is no evidence other than that statement.

THE COURT:  Well, did you bring Mr. Reddall's affidavit that says, "Hey, I dropped the ball.  I never did tell Mr. Hofer"?

MR. COX:  No, we did not, Your Honor.

THE COURT:  I mean -- that is what I need to get you where you need to go, and I don't see it.  So I am going to deny the motion for new trial.  Do you have an order?

MS. LOBES:  I do not.  It will be on file -- we can get one on file with the Court.

THE COURT:  All right.  If you will run it by Mr. Cox?  I know he won't approve of the substance, but just make sure he agrees with the form.

MS. LOBES:  Perfect.

THE COURT:  Thank you.

(Recess.)